# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JOEL M. SCHUMM**
Clinical Professor of Law

**DANIELLE M. TEAGARDEN**
Certified Legal Intern
Appellate Clinic
I.U. Robert H. McKinney School of Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WAYNE HURD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1309-CR-753 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Amy M. Jones, Judge
Cause No. 49F08-1212-CM-81946

**May 21, 2014**

**OPINION - FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Wayne Hurd was convicted of Class B misdemeanor battery following a nighttime incident at an Indianapolis bus stop. At his bench trial, the trial court prohibited him from calling his mother as a witness because she was not disclosed until the day of trial. The trial court sentenced Hurd to probation, which included a condition that prohibited him from going between 48th Street to the north, 28th Street to the south, Fall Creek Parkway to the east, and Martin Luther King Jr. Street to the west.

We find that even if the trial court abused its discretion in excluding Hurd's mother as a witness, the error was harmless because the offer of proof was not specific as to the substance of Hurd's mother's testimony, she was not present at the bus stop, and the trial court found the victim's testimony credible and Hurd's testimony to have gaps. However, we find that the trial court abused its discretion in imposing the probation condition because it was not reasonably related to Hurd's treatment and the protection of the public safety. We therefore affirm in part and reverse and remand in part.

**Facts and Procedural History**

In November 2012, Susan Schneider took an IndyGo bus home from work as she had done many times before. She got off the bus at 39th Street and College Avenue in Indianapolis around 8:45 p.m. As Susan started walking home, which was about one block away from the bus stop, Hurd approached her from behind, grabbed her right shoulder, and swung her around. Susan did not know Hurd. Hurd used enough force that Susan almost lost her footing. Susan kicked Hurd in the groin, causing him to fall to the ground. Frightened, Susan ran home and barricaded herself inside. She immediately called her

2

long-term, live-in boyfriend Douglas Forrest, who was on duty at the time as a sergeant for the Indianapolis Metropolitan Police Department.

Because Sergeant Forrest was nearby, he drove by the bus stop. Based on Susan's description, Sergeant Forrest apprehended Hurd, handcuffed him, and called for another officer. Officer Christopher Cooper responded and spoke with Susan. Officer Cooper then drove Susan to Sergeant Forrest's location. Susan identified Hurd as the person who had assaulted her. Tr. p. 21. Hurd told Officer Cooper that he thought Susan was somebody else. *Id.*

The State charged Hurd with Class B misdemeanor battery. Hurd was represented by a public defender.

A bench trial was held on August 7, 2013. The day before trial, a different public defender took over Hurd's case. At the beginning of trial, the trial court ordered anyone who was going to be a witness to stand and be sworn in. When a woman stood up, the trial court said, "I'm not sure who this lady is." *Id.* at 5. Defense counsel said it was Hurd's mother and he was not sure if he was going to call her as a witness. *Id.*

Hurd testified in his own defense that he was in the area of 39th and College on the night in question because he was going to Church's Chicken to eat. He said he saw Susan, who was the only person at the bus stop, and approached her from the front to ask her what time the bus came. Hurd, who lived on the east side of Indianapolis, needed to take the bus home. Hurd said as soon as he asked Susan what time the bus came, she ran away. Hurd denied touching Susan and denied that Susan kneed him in the groin. *Id.* at 26. Hurd

3

explained that he had been diagnosed with paranoid schizophrenia and was taking medication in November 2012.

After Hurd testified, defense counsel stated, "I'm just going to grab his mother." *Id.* at 32. The State immediately objected because "[t]his is the first time the State is hearing that this particular individual might be called as a witness. The State doesn't even know her name at this point." *Id.* at 32. When the trial court asked if Hurd's mother had been discovered as a potential witness, defense counsel responded:

> I apologize, Your Honor, I'm not entirely sure. I actually just got [this case] yesterday around three o'clock. I know Ms. Wright was handling it before. I just assumed that she had discovered all of the witnesses since it was set for trial. . . . I did not know this witness existed until I talked to her today . . . .

*Id.* at 33. The trial court ruled:

> Well, it doesn't appear as though there was ever any notice given that this particular person was a witness. And having this happen here today the day of trial . . . I'm not inclined to have her testify. The other thing I guess I would caution is what relevance she might add. I've heard absolutely no testimony—I don't even know her name—I've heard no testimony of her being present during this incident whatsoever. If she is able to provide historical information regarding the mental illness that's come up a few times during the course of the trial today that would be maybe appropriate for other times in these proceedings. But not so much for the trial so I'm not going to have—due to the late discovery notice here—I'm not going to have her . . . be called as a witness here today.

*Id.* Defense counsel then made an offer of proof about Hurd's character for non-aggressive behavior. At this point, Hurd's mother was identified as Brenda Joyce Hayden. Brenda said that if she were allowed to testify at trial, she would testify about the topics of Hurd's mental-health issues, how his medication affects him, his character and tendency for aggressiveness, and his general disposition. *Id.* at 35. Notably, defense counsel did not ask Brenda questions about these topics.

4

The trial court acknowledged that the evidence was disputed. *Id.* at 38. However, the court found that Susan was "quite credible" and that there were "a lot of gaps" in Hurd's testimony. *Id.*; *see also id.* at 41 (trial court: "I don't believe that [Susan] was being untruthful. I don't believe that she has any reason to."). Concluding that the State met its burden of proving beyond a reasonable doubt that Hurd committed Class B misdemeanor battery, the court found him guilty.

The case immediately proceeded to sentencing. During sentencing, Brenda testified about Hurd's mental illness and ongoing treatment at Gallahue Mental Health. Brenda also said she was thirty-five-year-old Hurd's guardian and that he lived with her, but he visited his friends several times a week in the area of 38th and College, often spending the night with them. Brenda, however, did not allow Hurd's friends to visit him at their house.

After listening to complaints about Hurd's activities near 38th Street, including reports of trespassing, the trial court sentenced Hurd to a suspended sentence of 178 days and non-reporting probation. As a condition of Hurd's probation, the trial court ordered him to comply with his treatment plan at Gallahue, including taking his medicine, and not to contact Susan. In addition, the court ordered Hurd to stay away from a five-block radius of 38th and College. *Id.* at 47. The court explained to Hurd that if he went back to that area, he would go to jail. As the trial court was appointing appellate counsel for Hurd, the prosecutor interrupted and explained that Sergeant Forrest would like the stay-away order extended from five blocks of 38th and College to two miles of 38th and College. *Id.* at 50. Sergeant Forrest suggested 48th Street to the north, 28th Street to the south, Fall Creek Parkway to the east, and Martin Luther King Jr. Street to the west. *Id.* Defense counsel

5

objected because "[t]he majority of that would be a public area. You know, we're fine with the Court saying that he can't go to you know, maybe private areas in that vicinity but a two mile[] radius; there's sidewalks you know, it's a largely public area." *Id.* The trial court, almost predicting what was to come, said to Hurd, "I understand what your mom is saying that you're not going to get this." *Id.* Nevertheless, the trial court extended the stay-away order and cautioned Hurd from "get[ting] on the bus[] and head[ing] over . . . to the middle part of the city." *Id.* at 51.

Less than two weeks later, on August 19, 2013, the probation department filed a notice of probation violation alleging that Hurd violated his probation because he was arrested for being in the area of 4100 N. College Avenue on August 11. Appellant's App. p. 24. The petition was later amended to include two additional allegations. *Id.* at 25.

Three months after sentencing, on November 14, 2013, the trial court modified the stay-away order to limit it to "a one block radius" of Susan's home. *Id.* at 15 (capitalization omitted). According to the CCS, the probation department was notified of this change. *Id.*

Hurd now appeals.

## Discussion and Decision

Hurd contends that the trial court erred in excluding his mother as a witness and in imposing a broad and unduly cumbersome probation condition.

### I. Exclusion of Late-Disclosed Witness

Hurd contends that the trial court erred in excluding his mother as a witness even though she was not disclosed until the day of trial. Hurd claims that according to the offer of proof, his mother would have testified about his character for peacefulness, which would

6

have been relevant in establishing whether he knowingly touched Susan in a rude, insolent, or angry manner and would have been admissible pursuant to Indiana Evidence Rules 404(a)(2)(A) and 405.

Trial courts have inherent discretionary power on the admission of evidence, and their decisions are reviewed only for an abuse of that discretion. *Vasquez v. State*, 868 N.E.2d 473, 476 (Ind. 2007). In addition, Indiana jurisprudence recognizes a strong presumption to allow defense testimony, even of late-disclosed witnesses: "'The most extreme sanction of witness exclusion should not be employed unless the defendant's breach has been purposeful or intentional or unless substantial and irreparable prejudice would result to the State.'" *Id.* (quoting *Wiseheart v. State*, 491 N.E.2d 985, 991 (Ind. 1986)).

Here, however, we find that even if the trial court abused its discretion in excluding Hurd's mother Brenda as a witness, the error was harmless. Not every trial error requires reversal. *Turben v. State*, 726 N.E.2d 1245, 1247 (Ind. 2000). Errors in the admission or exclusion of evidence are to be disregarded as harmless unless they affect the substantial rights of the party. *Fleener v. State*, 656 N.E.2d 1140, 1141 (Ind. 1995); *see also* Ind. Trial Rule 61. Moreover, in a bench trial, the harm from any evidentiary error is lessened. *Berry v. State*, 725 N.E.2d 939, 943 (Ind. Ct. App. 2000).

We first point out that the offer of proof was not very specific as to what Brenda's testimony would have been:

Q          Ma'am, could you state your name again?
A          Yes, Brenda Joyce Hayden.
Q          Okay. And what is your relationship to Mr. Hurd?
A          I am Wayne's mother and legal guardian.

7

Q Okay. And are you familiar with his mental health issues?
A Yes, I am.
Q Okay. Are you familiar with how his medication affects him?
A Yes, I am.
Q And are you familiar with his character and his tendencies for aggressiveness and behavior?
A Yes, I am.
Q And [h]is general disposition?
A Yes.

Tr. p. 35. This offer of proof is, at best, minimally sufficient to convey the point of Brenda's testimony. *See State v. Wilson*, 836 N.E.2d 407, 409 (Ind. 2005), *reh'g denied*. Looking at this offer generously, it shows that Brenda would have testified that Hurd was generally non-aggressive when taking his medication.

But as the trial court explained, *see* Tr. p. 33, Brenda's testimony would have limited relevance because she was not present at the bus stop. *Cf. S.T. v. State*, 764 N.E.2d 632, 636 (Ind. 2002) (holding that the juvenile should have been allowed to present the testimony of both his mother and friend at the fact-finding hearing even though they were belatedly disclosed because although they were not exactly objective and detached witnesses, "they nonetheless would have added a different perspective to the [juvenile's] version of events and reinforced his account, and therefore, the exclusion of the witnesses unnecessarily prejudiced [him]." (quotation omitted)). And Brenda's testimony would have required the trial court to believe that Hurd was taking his medication at the time of the incident. *See* Tr. p. 38 (trial court: "And I don't know necessarily if you have a clear recollection of what did actually happen, I don't know if that was based on the medication you were taking at that time or you weren't taking."). Even assuming that Hurd is a generally peaceful person, this does not negate Susan's version of events, which the trial

8

court found "quite credible," account for the "gaps" in Hurd's testimony that the trial court found, or explain Hurd's statement to Officer Cooper at the scene that he thought Susan was somebody else. Therefore, even if the trial court abused its discretion in excluding Brenda as a witness, the error was harmless. *See, e.g.*, *Williams v. State*, 714 N.E.2d 644, 652 (Ind. 1999) (finding exclusion of belatedly disclosed witness harmless where DNA and other evidence connected defendant to the crime); *Farris v. State*, 818 N.E.2d 63, 70 (Ind. Ct. App. 2004) (finding exclusion of belatedly disclosed witness harmless where there was uncertainty about substance of witness's testimony and evidence against defendant was otherwise strong), *trans. denied*.

## II. Stay-Away Order

Next, Hurd contends that the trial court erred in imposing a broad and unduly cumbersome probation condition that prohibited him "from being within hundreds of city blocks in the central part of Indianapolis." Appellant's Br. p. 10. The State replies that this issue is moot because after the probation department filed the amended notice of probation violation, the trial court modified the stay-away order to only a one-block radius of Susan's home. *See Samm v. State*, 893 N.E.2d 761, 765 (Ind. Ct. App. 2008) ("A case is deemed moot when no effective relief can be rendered to the parties before the court."). Hurd responds that because this modification was prospective only and the notice of probation violation remains pending, the issue is not moot.

Because it appears from the record before us that this notice of probation violation remains pending,[1] we agree with Hurd that the issue is not moot. We therefore address

---

[1] The CCS contained in the record is dated January 29, 2014.

whether the probation condition that prohibited Hurd from going between 48th Street to the north, 28th Street to the south, Fall Creek Parkway to the east, and Martin Luther King Jr. Street to the west was broad and unduly cumbersome when the trial court originally imposed it.

Probation is a criminal sanction whereby a defendant specifically agrees to accept conditions upon his behavior in lieu of imprisonment. *Bratcher v. State*, 999 N.E.2d 864, 873 (Ind. Ct. App. 2013), *trans. denied.* Trial courts have broad discretion in determining the appropriate conditions of a defendant's probation. *Id.* This discretion is limited only by the principle that the conditions imposed must be reasonably related to the treatment of the defendant and the protection of public safety. *Id.* Thus, our review is essentially limited to determining whether the conditions placed on the defendant are reasonably related to attaining these goals. *Id.* We will not set aside a trial court's probation terms unless it has abused its discretion. *Id.*

We agree with Hurd that the probation condition was not reasonably related to his treatment and the protection of the public safety. It was reasonable for the trial court to express concern for Hurd's mental health, and the court did so by ordering Hurd to comply with his treatment regimen at Gallahue. Further, given that Hurd's conviction was for a crime against a person, it was also reasonable for the court to prohibit contact with Susan. However, prohibiting Hurd from entering a significant area of the central part of Indianapolis is not tailored to his rehabilitation or public safety. Accordingly, we find that the trial court abused its discretion in originally imposing the probation condition that prohibited Hurd from going between 48th Street to the north, 28th Street to the south, Fall

10

Creek Parkway to the east, and Martin Luther King Jr. Street to the west. We therefore remand this case to the trial court with instructions to vacate any pending probation violations based upon this original condition.

Affirmed in part and reversed and remanded in part.

NAJAM, J., and BROWN, J., concur.