**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jul 31 2014, 9:31 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TERRY LEE CARR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 90A05-1311-CR-548 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WELLS CIRCUIT COURT
The Honorable Kenton W. Kiracofe, Judge
Cause No. 90C01-1305-FD-53

**July 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Terry Lee Carr appeals his conviction, following a jury trial, for class D felony theft. He raises two issues for our review which we restate as: (1) whether the trial court abused its discretion when it excluded his brother as a witness; and (2) whether the State presented sufficient evidence to sustain the conviction. Finding no abuse of discretion and/or harmless error in the exclusion of the witness and finding the evidence sufficient, we affirm.

**Facts and Procedural History**

The facts most favorable to the jury's verdict indicate that, on April 28, 2013, Brieanna Jent drove Carr and Brandon Moffett to the Bluffton Wal-Mart to exchange coins for cash. The three drove in Jent's sky-blue 2002 Saturn, parked in the Wal-Mart parking lot, and entered the store. John Amos drove his friend, Rachel Johns, to the same Wal-Mart in his green 1997 Saturn. Amos parked next to Jent's car. Johns suffers from epilepsy and takes a generic pill form of the drug Keppra twice daily to treat her condition. The medication is quite expensive. Johns left a bottle containing her medication in the open center console of Amos's vehicle, and the two went inside Wal-Mart briefly to shop.

After exchanging coins inside the store, Jent went to the restroom. Carr exited Wal-Mart first and Moffett exited soon thereafter. As Moffett exited, he observed Carr in the parking lot getting into the wrong vehicle. Moffett said, "Hey bro, wrong car." Tr. at 70. Carr got out of the car and responded, "Oh thanks, my bad." *Id.* When Moffett got closer to the cars, he observed some "pills on the ground" and asked Carr, "Hey, what are all of these?" *Id.* Carr claimed, "I don't know[,] they were out here when I got out here." *Id.*

2

When Jent returned to her vehicle, Carr and Moffett were in the car waiting for her. They were laughing about something, but when Jent asked them what they were laughing about, they did not tell her. Jent drove away from the store.

Johns and Amos exited Wal-Mart and noticed that approximately one-third of her pills were on the ground next to the front driver's-side tire. The rest of the pills, and the prescription bottle, were missing. Because it had rained earlier in the day, the pills on the ground were wet and unusable.

The theft of the pills was immediately reported to authorities. Based upon the report, Wells County Sheriff's Deputy Russ Mounsey approached Jent and Moffett at the Wal-Mart gas station. Jent had dropped off Carr somewhere and then returned to Wal-Mart with Moffett. Deputy Mounsey told Jent and Moffett that police wanted to speak to them and he directed Jent and Moffett to the Bluffton Police Station. Jent and Moffett went to the station and spoke with Officer Dennis Fiscus. When Officer Fiscus asked Moffett about the pills, Moffett told Officer Fiscus that the police "should talk to" Carr. *Id*. at 73.

A short time later, Carr voluntarily walked into the Bluffton Police Station to talk to officers. Officer Fiscus asked Carr if he would like to go to an interview room, and Carr assented. Before Officer Fiscus could ask Carr any questions, Carr said, "I wasn't in any car and I don't do pills." *Id*. at 75. At that point, Officer Fiscus had not even mentioned anything about the theft or any pills. Officer Fiscus asked Carr if he was ever inside the green car at Wal-Mart, and Carr stated that "he wasn't in the car." *Id*. at 78. As Officer Fiscus continued to talk to Carr, Carr then stated that he "opened the door" to the green car.

3

*Id.* Moments later, Carr changed his story and stated that he was "halfway in the car" and that he may "have kicked some pills out of the car from inside the car." *Id.* Officer Fiscus explained to Carr that the pills were inside the center console and that he did not believe it would have been possible to accidentally kick the pills out of the car.

The State charged Carr with class D felony theft and with being a habitual offender. A jury trial was held on September 24, 2013. After the State rested, Carr attempted to call his brother Marion, who had been observing the trial in the courtroom, as a rebuttal witness. The State objected, arguing that Marion had not been disclosed as a witness. After hearing argument from both parties, including an offer to prove by Carr, the trial court denied Carr's request and excluded Marion as a witness. The jury found Carr guilty of theft. Carr subsequently pled guilty to being a habitual offender. The trial court sentenced Carr to an aggregate sentence of seven years' imprisonment. This appeal followed.

## Discussion and Decision

### Section 1 – Exclusion of Witness Testimony

Carr first asserts that the trial court abused its discretion in excluding his brother Marion as a witness. Carr did not disclose Marion as a witness until the State rested its case. According to an offer of proof, Marion would have testified that Officer Fiscus called him on the day of the alleged crime and that Officer Fiscus told Marion that he wished to speak to Carr about "some pills being stolen." *Id.* at 84. Marion would have testified that he relayed this information to Carr, which would have been relevant to explain why Carr made an unsolicited denial of his involvement in the specific alleged crime to Officer Fiscus.

4

"Trial courts have inherent discretionary power on the admission of evidence, and their decisions are reviewed only for an abuse of that discretion." *Hurd v. State*, 9 N.E.3d 720, 724 (Ind. Ct. App. 2014). Regarding the admission of testimony of late-disclosed witnesses, our supreme court has held:

> While wide discretion is given to the trial court in such matters as the course of proceedings, exclusion of evidence, and violations, in making its decisions, the trial court must give substantial weight to a defendant's constitutional rights, here the right to compulsory process under the Sixth Amendment to the U.S. Constitution and Art. 1, § 13 of the Indiana Constitution. The U.S. Supreme Court has made clear that, depending on the circumstances, excluding a witness may be appropriate or it may be unconstitutional. *Taylor v. Illinois*, 484 U.S. 400, 407-16, 108 S. Ct. 646, 652-56, 98 L. Ed. 2d 798, 809-15 (1988). Indiana jurisprudence recognizes a strong presumption to allow defense testimony, even of late-disclosed witnesses: "The most extreme sanction of witness exclusion should not be employed unless the defendant's breach has been purposeful or intentional or unless substantial and irreparable prejudice would result to the State." *Wisehart v. State*, 491 N.E.2d 985, 991 (Ind. 1986).

*Vasquez v. State*, 868 N.E.2d 473, 476 (Ind. 2007). Factors that are helpful in determining whether to exclude a witness include: (1) when the parties first knew of the witness; (2) the importance of the witness's testimony: (3) the prejudice resulting to the opposing party; (4) the appropriateness of lesser remedies such as continuances; and (5) whether the opposing party would be unduly surprised and prejudiced by the inclusion of the witness's testimony. *Id*.

Considering those factors, we cannot say that the trial court abused its discretion in excluding Marion's testimony. As determined by the trial court, this was not newly discovered evidence. Carr was well aware prior to trial that the State planned to use his unsolicited denial to Officer Fiscus as evidence of his consciousness of guilt, and therefore

5

any rebuttal evidence regarding that denial which was available through Marion would have been known to Carr. Moreover, allowing Marion's testimony at the "11th hour" would have resulted in substantial prejudice to the State. Tr. at 87. Marion had been sitting in the courtroom during trial and listening to the State's witnesses. As noted by the trial court, had the State known that Carr intended to call Marion as a witness, the State likely would have sought a separation of witnesses order. Because Marion had already heard the State's case, a continuance at that point would not have remedied the situation. As further noted by the trial court, in preparation for Marion's testimony, the State likely would have submitted a record and/or a recording of Officer Fiscus's calls in order to disprove Marion's claims. Under the circumstances, we will not second-guess the trial court's decision to exclude Marion as a witness.

Even were we to conclude that the trial court abused its discretion in excluding this late-disclosed witness, any error was harmless. Errors in the admission or exclusion of evidence are to be disregarded as harmless unless they affect the substantial rights of the party. *Hubbell v. State*, 754 N.E.2d 884, 890 (Ind. 2001); Ind. Trial Rule 61. Assuming that the jury would have considered Marion a credible witness, which is doubtful in light of his impeachable criminal history and the fact that he is hardly an objective witness, his testimony would have neither contradicted the circumstantial evidence of Carr's crime nor explained Carr's subsequent inconsistent statements to Officer Fiscus regarding his entry into Amos's car. Thus, any error that may have occurred in the exclusion of Marion as a witness was harmless. *See Hurd*, 9 N.E.3d at 725 (finding exclusion of belatedly disclosed witness

6

harmless in class B misdemeanor battery trial where excluded testimony would not have negated victim's version of events regarding the battery, accounted for gaps in defendant's testimony, or explained defendant's statement to police at the scene that he touched the victim because he thought she was someone else).

## Section 2 – Sufficiency of the Evidence

Carr next challenges the sufficiency of the evidence to sustain his conviction for class D felony theft. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. We neither reweigh the evidence nor assess witness credibility. *Id*. It is not necessary that the evidence overcome every reasonable hypothesis of innocence, and we will affirm the defendant's conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id*. If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003).

To prove the offense of class D felony theft, the State had to prove that Carr knowingly or intentionally exerted unauthorized control over the property of another person, with intent to deprive the other person of any part of its value or use. *See* Ind. Code § 35-43-4-2. A theft conviction may be based on circumstantial evidence alone. *Holloway v. State*, 983 N.E.2d 1175, 1178 (Ind. Ct. App. 2013).

Here, Moffett observed Carr inside Amos's vehicle just minutes before most of Johns's medication and the bottle it was contained in, which previously had been inside the

7

vehicle, was determined by Johns to be missing. When questioned by Officer Fiscus shortly thereafter, Carr immediately denied entering any car and mentioned the pills, despite the fact that Officer Fiscus had not yet provided any details to Carr regarding the crime he was investigating. Following this incriminating denial, Carr gave inconsistent accounts of the events to Officer Fiscus, first claiming that he never entered Amos's vehicle, and then admitting that he did enter Amos's vehicle and proposing that he could have accidentally kicked some pills out of the vehicle. We have long held that providing false information to police is admissible to show a defendant's consciousness of guilt. *Serano v. State*, 555 N.E.2d 487, 494 (Ind. Ct. App. 1990), *trans. denied* (1991).

We disagree with Carr that the State was required to present eyewitness testimony from someone who saw Carr take the pills out of the vehicle or that the State was required to present evidence that the missing pills were found in Carr's possession. Carr's claims are merely an invitation for us to reweigh the evidence in his favor, a task not within our prerogative on appeal. Based upon the circumstantial evidence presented, and in light of our supreme court's recent application of the sufficiency of the evidence standard of review in *Meehan v. State*, 7 N.E.3d 255 (Ind. 2014) (burglary conviction affirmed on extremely small quantum of circumstantial evidence), we conclude that a reasonable factfinder could infer that Carr knowingly or intentionally exerted unauthorized control over John's pills with

intent to deprive her of a part of their value or use.[1] We therefore affirm Carr's conviction for class D felony theft.

Affirmed.

RILEY, J., and MATHIAS, J., concur.

---

[1] Carr maintains that the State failed to establish that a crime was even committed and briefly mentions our rule of law that "[f]or a confession to be admitted into evidence, the State must establish the corpus delicti." *Rickey v. State*, 661 N.E.2d 18, 23 (Ind. Ct. App. 1996), *trans. denied* (1997). First, we note that Johns's testimony that her closed bottle of pills was inside the vehicle console when she went into Wal-Mart, and that she returned to the vehicle and discovered that one-third of her pills were on the ground and that the rest of her pills and the bottle were missing is sufficient to establish that a theft occurred. Moreover, we fail to see the applicability of the corpus delicti rule here, as Carr did not confess to the theft and no statement that rises to the level of a confession was offered or admitted into evidence. Carr's argument is misplaced.