

**FILED**
Feb 04 2015, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jason J. Pattison
Jenner Pattison Hensley & Wynn, LLP
Madison, Indiana

ATTORNEY FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Chad A. Madden,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | February 4, 2015<br><br>Court of Appeals Case No.<br>39A01-1404-CR-173<br><br>Appeal from the Jefferson Superior Court<br><br>The Honorable Alison T. Frazier, Judge<br><br>Cause No. 39D01-1206-FB-721 |

**Mathias, Judge.**

[1]     Chad A. Madden ("Madden") appeals the order of the Jefferson Superior Court denying his motion to correct error which claimed that the trial court had improperly delegated to the Community Corrections program the authority to decide whether Madden should be subject to electronic monitoring.

[2]     We affirm.

# Facts and Procedural History

[3] On June 28, 2011, pursuant to a plea agreement, Madden pled guilty to one count of Class D felony receiving stolen property in Cause No. 39D01-1006-FB-487 ("Cause No. 487"). The trial court accepted the plea agreement and imposed a three-year suspended sentence. Nine months later, on March 13, 2012, the State charged Madden with one count of Class A misdemeanor check deception in Cause No. 39D01-1203-CM-305 ("Cause No. 305").

[4] On June 7, 2012—at which time Madden was on probation in Cause No. 487, and his charges under Cause No. 305 were pending—security cameras recorded him stealing several cartons of cigarettes from a gas station in Hanover, Indiana. The next day, when police officers attempted to arrest Madden, he fled on foot and, after a brief chase, had to be subdued with a taser. After Madden was apprehended, the police discovered methamphetamine and methadone in his possession. Accordingly, on June 11, 2012, the State charged Madden in Cause No. 39D01-1206-FB-721 ("Cause No. 721") as follows:  Count I, Class B felony possession of methamphetamine; Count II, Class C felony possession of a controlled substance; Count III, Class D felony theft; Count IV, Class A misdemeanor resisting law enforcement; and Count V, Class A misdemeanor possession of paraphernalia. In addition, the State filed a petition to revoke Madden's probation in Cause No. 487.

[5] On March 6, 2013, Madden entered into a plea agreement with the State whereby he pleaded guilty to the reduced charge of Class D felony possession of

methamphetamine in Cause No. 721, Class A misdemeanor check deception in Cause No. 305, and admitted that he violated his probation in Cause No. 487. The trial court accepted the plea agreement and, per its terms, sentenced Madden to three years for possession of methamphetamine, one year for check deception, and reinstated his three-year suspended sentence for the probation violation—all to be fully executed and served consecutively. In accordance with the plea agreement, the trial court also referred Madden to the "Purposeful Incarceration" program, with the recommendation that he be placed in the Therapeutic Community Program ("TCP") at Branchville Correctional Facility. The Department of Correction ("DOC") subsequently assigned Madden to Branchville, and on April 22, 2013, he enrolled in the TCP.

[6] Another provision of the plea agreement stipulated that upon his successful completion of the TCP, Madden could petition the trial court for a sentence modification. On December 18, 2013, Madden filed a petition to modify his sentence based on his completion of the TCP program. The trial court held a hearing on Madden's sentence modification petition on February 19, 2014, and issued an order that same day granting the petition. In its sentence modification order, the trial court found that the sentences under Cause No. 487 and Cause No. 305 had been fully served. The court then suspended the remaining sentence under Cause No. 721 to supervised probation. The trial court also ordered Madden:

> to report to the Jefferson County Community Corrections Department
> as a specific term of probation with determination of appropriate
> program to be made by the Community Corrections Department, and

shall include all other terms of probation as outlined in the *Terms of Supervised Probation With Community Corrections Placement* prepared by the Court, read to the defendant at this hearing, and filed in this matter.

Appellant's App. p. 98. In relevant part, the Terms of Probation instructed Madden to:

14.    comply with all rules for Community Corrections placement, including but not limited to "component rules", and *with any program recommended or required by Community Corrections, including electronic monitoring*, day reporting, counseling, and educational programs[.] [I]n the event that [C]ommunity Corrections recommends or requires electronic monitoring, the following conditions and terms apply:

15. . . . be confined to home at all times except when the defendant is

   a.   working at employment approved by the Court or traveling to or from said employment,

   b.   unemployed and seeking employment approved by the Court,

   c.   undergoing counseling, medical, mental health, psychiatric treatment, or other treatment approved by the Court,

   d.   attending an educational institution or facility or other program approved by the Court,

   e.   attending a regularly scheduled religious service at a bona fide place of worship,

   f.   participating in a community work release or community service program approved by the Court, or

   g.   engaged in another activity approved in advance by the Court or Community Corrections[.]

Appellant's App. p. 94 (emphasis added). The Terms of Probation further notified Madden that a violation of the electronic monitoring rules could result in a criminal charge for escape; that he was obligated to abide by a schedule prepared by

Community Corrections and to communicate any changes in that schedule with Community Corrections; that he must maintain a working land-line telephone at his house; and that he would be responsible for payment of all applicable electronic monitoring fees. At the modification hearing, Madden acknowledged that he understood and agreed to comply with the Terms of Probation.

[7] On March 19, 2014, Madden filed a motion to correct error. He alleged that the trial court improperly delegated its authority by allowing Community Corrections to decide whether—and for what duration—he should be placed on electronic monitoring as a condition of his probation.[1] On March 21, 2014, the trial court denied his motion without a hearing. Madden now appeals.

## Standard of Review

[8] Madden claims that the trial court erred in setting the conditions of his probation. We first note that he is appealing from the trial court's denial of his motion to correct error. On review, our court will uphold a trial court's ruling on a motion to correct error absent an abuse of discretion. *Nichols v. State*, 947 N.E.2d 1011, 1015 (Ind. Ct. App. 2011), *reh'g denied*. The trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances, or when the trial court misinterprets the law. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). To the extent that Madden has presented any

---

[1]The record does not indicate whether Community Corrections did, in fact, subject Madden to electronic monitoring.

issues that involve questions of law, our review is *de novo*. *Nichols*, 947 N.E.2d at 1015.

[9] We also note that trial courts are vested with broad discretion in establishing the terms of probation, which are subject to review only for an abuse of discretion. *Berry v. State*, 10 N.E.3d 1243, 1247 (Ind. 2014). Probation conditions "must be reasonably related to the treatment of the defendant and the protection of public safety." *Hurd v. State*, 9 N.E.3d 720, 726 (Ind. Ct. App. 2014). Accordingly, our task on review is to consider whether the conditions imposed on the defendant "are reasonably related to attaining these goals." *Id*. Although probation and community corrections programs are not precisely the same, they are treated the same for many purposes. *McQueen v. State*, 862 N.E.2d 1237, 1243 (Ind. Ct. App. 2007). Both probation and community corrections serve as alternatives to commitment to the DOC; they both are made at the sole discretion of the trial court; a defendant is not entitled to serve a sentence in either, and placement is a "matter of grace" and a "favor, not a right"; and the due process rights for revocation of community corrections placement and probation hearings are the same. *Id*.

# Discussion and Decision

[10] Madden claims that the trial court erred by delegating to Community Corrections the authority to determine if, and for how long, he should be placed on home detention. Home detention, he claims, is a "materially punitive" condition of probation that must be determined by the trial court, not

Community Corrections. Madden notes that Indiana Code section 35-38-2-1(a)(1) provides that the trial court "shall . . . specify in the record the conditions of the probation." He also observes that, as a condition of probation, "*the court* may require a person to . . . undergo home detention under IC 35-38-2.5." Ind. Code § 35-38-2-2.3(a)(16) (emphasis added). Madden reads these provisions to mean that only the trial court may determine if and for how long he should be subject to home detention. We do not agree.

[11] Although trial courts are indeed required by statute to set forth the terms of probation, they also have authority to allow Community Corrections programs to supervise various aspects of probation. For example, a trial court may order a probationer to home detention supervised by a Community Corrections program. Ind. Code § 35-38-2.5-5(c). A trial court may also order a probationer subject to such home detention to abide by a schedule prepared by the Community Corrections program. Ind. Code § 35-38-2.5-6(3). More importantly, when supervising a probationer on home detention, Community Corrections programs are specifically required by statute to "set the monitoring device[2] and surveillance equipment to minimize the possibility that the

---

[2] A "monitoring device" is defined as "an electronic device that:

    (1)   can record or transmit information twenty-four (24) hours each day regarding an offender's:

        (A)   presence or absence from the offender's home; or

        (B)   precise location;

    (2)   is minimally intrusive upon the privacy of the offender or other persons residing in the offender's home

offender or alleged offender can enter another residence or structure without a violation." Ind. Code § 35-38-2.5-10(d).

[12] Here, the trial court ordered, as a condition of probation, that Madden be subject to home detention as supervised by the Community Corrections program, which is authorized by the home detention statutes. Also, the Community Corrections program is required by statute to place such a probationer on electronic monitoring. Given this statutory authority, we cannot say that the portion of the trial court's order requiring Madden to comply with all rules established by the Community Corrections program, including electronic monitoring, improperly delegates the trial court's sentencing authority to the Community Corrections program.

[13] We find the cases cited by Madden in support of his claim to be distinguishable. For example, Madden cites *Freije v. State*, 709 N.E.2d 323 (Ind. 1999), to

---

(3)  with the written consent of the offender and with the written consent of other persons residing in the home at the time an order for home detention is entered, may record or transmit:

    (A)  a visual image;

    (B)  an electronic communication or any sound; or

    (C)  information regarding the offender's activities while inside the offender's home; and

(4)  can notify a probation department, a community corrections program, or a contract agency if the offender violates the terms of a home detention order.

(b)  The term includes any device that can reliably determine the location of an offender and track the locations where the offender has been, including a device that uses a global positioning system satellite service.

(c)  The term does not include an unmanned aerial vehicle (as defined in IC 35-31.5-2-342.3).

Ind. Code § 35-38-2.5-3(a).

support his claim that the trial court cannot delegate authority to impose materially punitive obligations to Community Corrections. However, *Freije* does not hold that the trial court may not "delegate" authority to Community Corrections. Instead, it holds that a trial court may not unilaterally impose conditions of probation that materially add to the punitive obligation, such as home detention and community service, after the court has already accepted a plea agreement which did not contain such conditions. *Id*. at 325-26. *See also Jackson v. State*, 968 N.E.2d 328, 332 (Ind. Ct. App. 2012) (following *Freije* and holding that the trial court was without authority to order defendant to perform community service when such was not provided for in plea agreement); *see also Disney v. State*, 441 N.E.2d 489, 493 (Ind. Ct. App. 1982) (holding that trial court erred in ordering restitution as a condition of probation where such was not included in the plea agreement). Here, however, Madden does not claim that the trial court's modification of his sentence is contrary to his plea agreement.[3] In fact, the plea agreement specifically authorizes the trial court to modify Madden's sentence, and the plea agreement places no limitations on the trial court's discretion in so modifying the sentence. *See* Appellant's App. p .61.

[14] Similarly, *McGuire v. State*, 625 N.E.2d 1281 (Ind. Ct. App. 1993), provides little support for Madden's position. That case held that a trial court erred in ordering restitution in an amount to be determined by the probation

---

[3]The dissent contends that, even if the trial court had authority to "delegate" to Community Corrections the authority to determine the conditions of Madden's electronic monitoring, such a condition would violate the terms of his plea agreement. We disagree, and as noted above, Madden does not directly claim that the trial court's modification order violated the plea agreement.

department, not to exceed $250. *Id*. at 1282. The court noted that the statutory authority to order restitution granted such authority to the trial court, not the probation department. *Id*. Here, in contrast, the relevant statutes authorize the trial court to impose home detention as a condition of probation and to have a Community Corrections program supervise such home detention. Other statutes authorize the Community Corrections program to set rules for probationers placed in the program and specifically requires Community Corrections to set monitoring devices and surveillance equipment to ensure a probationer's compliance.[4]

[15]  Madden also claims that the trial court's order deprives him of due process. Although not entitled to the full panoply of rights afforded to a criminal defendant, a probationer is entitled to certain minimum requirements of procedural due process, which include:

> (a) written notice of the claimed violations of probation; (b) disclosure to the probationer of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking probation.

---

[4]The other cases cited by Madden are also unavailing. *Ratliff v. State*, 546 N.E.2d 309, 313 (Ind. Ct. App. 1989), simply holds that "a defendant's probation cannot be revoked for the violation of conditions not specified, either orally or in writing, at the time of sentencing." Here, however, the terms of Madden's probation, including any electronic monitoring, are set forth in the written terms of his probation. Nor has Madden yet been accused of violating any of the conditions of his probation; he is simply challenging the terms of his probation. Also, *United States v. Bonanno*, 146 F.3d 502, 511 (7th Cir. 1998), held that the trial court exceeded its authority and gave to the probation office too much discretion to manage drug tests of the defendant. However, not only is *Bonanno* not binding on this court, the statutes at issue here do authorize the actions of the trial court.

*Pope v. State*, 853 N.E.2d 970, 972-73 (Ind. Ct. App. 2006) (citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). In arguing that he was denied due process, Madden first simply reiterates his claims regarding the trial court's allegedly improper "delegation." Madden then argues:

> By delegating that authority to Community Corrections the Trial Court eliminates the probationers right to a hearing, where [the defendant] should be represented by counsel, be provided the opportunity to present evidence, and have the opportunity to contest Community Corrections decision to impinge on their "conditional liberty interest".

Appellant's Br. p. 11. To the extent that Madden's argument refers to the trial court's sentence modification order, we would note that Madden was in fact provided with a hearing, at which he was represented by counsel and presented evidence to support his sentence modification. Accordingly, we cannot see any violation of procedural due process in this regard.

[16] If Madden is instead referring to any future finding by the Community Corrections program that he violated his probation, this question is not yet ripe for review as Madden has not yet been found to be in violation of any terms of his probation. Moreover, we find nothing in Madden's Terms of Probation that would indicate that the trial court intended to allow the Community Corrections program unilaterally to determine whether Madden had violated the terms of his probation.[5]

---

[5]Further, as we noted in *Pope*, even if we were to conclude that "Community Corrections [is] the proper decision-making authority," a doubtful proposition, then Community Corrections would be "required to give [the probationer] notice and a hearing." 853 N.E.2d at 973.

# Conclusion

[17]     The trial court's order modifying Madden's sentence and imposing conditions of probation did not improperly delegate the trial court's authority to Community Corrections, nor did the trial court's order deprive Madden of procedural due process.

[18]     Affirmed.

Crone, J., concurs.
Riley, J., dissents with opinion.

| | |
|---|---|
| Chad A. Madden,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | February 4, 2015<br><br>Court of Appeals Case No.<br>39A01-1404-CR-173<br><br>Appeal from the Jefferson Superior<br>Court<br><br>The Honorable Alison T. Frazier,<br>Judge<br><br>Cause No. 39D01-1206-FB-721 |

**Riley, Judge, dissenting.**

I disagree with the majority that the trial court did not improperly delegate its authority to Community Corrections to determine whether, and for what duration, Madden should be subject to electronic monitoring—*i.e.*, home detention—as a condition of his probation. Therefore, I respectfully dissent.

Indiana's probation statute unambiguously states that "[w]henever it places a person on probation, the *court* shall . . . specify in the record the conditions of the probation." Ind. Code § 35-38-2-1(a)(1) (emphasis added). Specifically, "the *court* may require a person to do [any] combination" of twenty-three statutorily-enumerated conditions, one of which is to "[u]ndergo home detention." I.C. § 35-38-2-2.3(a)(16) (emphasis added). In addition, the home detention statute specifies that "as a condition of probation a *court* may order an

offender confined to the offender's home for a period of home detention lasting at least sixty (60) days." I.C. § 35-38-2.5-5 (emphasis added).

[21] Once a court has ordered electronic monitoring as a condition of probation, it may assign supervisory duties to a community corrections department. I.C. § 35-38-2.5-5(c). *See White v. State*, 560 N.E.2d 45, 47 (Ind. 1990) (noting that the trial court "sets the 'conditions of probation' and the probation officer supervises and assists the defendant in implementing and carrying out those conditions"). The majority assumes that Community Corrections' supervisory role equates to having the authority to require home detention.[6] I disagree.

[22] The probation and home detention statutes explicitly establish that the duty to demarcate the conditions of probation resides squarely with the trial court. *See McGuire v. State*, 625 N.E.2d 1281, 1282 (Ind. Ct. App. 1993) (finding the trial court improperly delegated authority to the probation department to fix the amount and manner of restitution because the probation statute specifically directs the trial court to make these determinations). Nowhere in these statutes is there language indicating that the trial court may delegate its authority to define a defendant's terms of probation, and "it is just as important to recognize what a statute does not say as it is to recognize what it does say." *Million v.*

---

[6] The State contends that community corrections programs are statutorily authorized to establish their own rules, and "community corrections inherently includes 'electronic monitoring.'" (State's Br. p. 8). In support of this argument, the State relies on Indiana Code chapter 35-38-2.6, which governs direct placement in a community corrections program. Contrary to a sentence that has been suspended to probation, direct placement is a means of serving the executed portion of a sentence and must be succeeded by a term of probation. I.C. § 35-38-2.6-7; *Brown v. State*, 894 N.E.2d 598, 600-01 (Ind. Ct. App. 2008). Home detention may be ordered for either probation or direct placement in community corrections; here, however, the trial court expressly made Madden's compliance with Community Corrections' requirements a condition of his probation. Thus, this case is governed by Indiana Code chapter 35-38-2 and chapter 35-38-2.5.

*State*, 646 N.E.2d 998, 1002 (Ind. Ct. App. 1995).  Contrary to the majority's contention that "the Community Corrections program is required by statute to place such a probationer on electronic monitoring[,]" the home detention statute specifies that a "community corrections program charged by a court with supervision of offenders and alleged offenders *ordered to undergo home detention* shall, at the beginning of a period of home detention, set the monitoring device . . . ."  I.C. § 35-38-2.5-10(d) (emphasis added).  Accordingly, before Community Corrections may "set the monitoring device," there must be an order for home detention from the trial court.  *See* I.C. §§ 35-38-2.5-5; -6; -10(d).

[23]  Moreover, a probationer must receive "prospective notice of the standard of conduct required of him or her while on probation."  *Million*, 646 N.E.2d at 1000.  Pursuant to the probation statute, "the trial court must provide the defendant a written statement containing the terms and conditions of probation at the sentencing hearing."  *Gil v. State*, 988 N.E.2d 1231, 1234 (Ind. Ct. App. 2013); *see* I.C. § 35-38-2-2.3(b)(1).  If no written statement is furnished, the record must at least reflect "that the probationer has been orally advised by the sentencing court of the conditions of his probation and [that] the defendant specifically acknowledges that he understands those conditions."  *Seals v. State*, 700 N.E.2d 1189, 1190 (Ind. Ct. App. 1998).

[24]  The majority correctly notes that Madden has not been accused of any probation violations, but the purpose of requiring a record of the specific terms of probation is also to "prohibit the imposition of additional conditions after

sentencing." *Million*, 646 N.E.2d at 1000. At the time of sentencing, probations are "entitled to provisions which establish definite restrictions during the probation period." *Dulin v. State*, 346 N.E.2d 746, 754 (Ind. Ct. App. 1976), *reh'g denied*. "[T]he language must be such that it describes with clarity and particularity the misconduct that will result in penal consequences." *Hunter v. State*, 883 N.E.2d 1161, 1163 (Ind. 2008).

[25] Here, the Terms of Probation failed to conclusively apprise Madden of his obligations because the condition of home detention was tentative, pending an assessment by Community Corrections. The Terms of Probation specified the rules that would govern Madden's confinement in the event that Community Corrections elected to require electronic monitoring, and Madden agreed to comply with these rules when read aloud by the trial court. *See* I.C. §§ 35-38-2.5-6; -7(a). Thus, there is no dispute that Madden had notice of the restrictions to which he *might* be subjected. However, absent an order from the trial court definitively making home detention/electronic monitoring a condition of his probation, these parameters are inconsequential. Accordingly, I would find that the trial court abused its discretion by authorizing Community Corrections to officially decide whether to impose the condition of home detention.

[26] Furthermore, notwithstanding whether the trial court improperly delegated a sentencing decision to Community Corrections, I would nevertheless find that it was an abuse of discretion to require electronic monitoring as a condition of Madden's probation because the trial court's initial sentencing decision and basis for modification were controlled by the plea agreement. Upon acceptance

of a plea agreement, which is contractual in nature, the trial court is bound by its terms "and is precluded from imposing any sentence other than required by the plea agreement." *Jackson v. State*, 968 N.E.2d 328, 332 (Ind. Ct. App. 2012) (quoting *Bennett v. State*, 802 N.E.2d 919, 921 (Ind. 2004)). Similarly, a sentence may only be modified to the extent that it would not violate the plea agreement "had it been the sentence originally imposed." *Pannarale v. State*, 638 N.E.2d 1247, 1249 (Ind. 1994).

[27] The plea agreement fixed Madden's aggregate executed sentence at seven years. Other than a provision stipulating that the State and trial court could "consider modification of [Madden] to Jefferson County" upon his completion of the Therapeutic Community Program, the plea agreement is entirely silent regarding any terms of probation. (Appellant's App. p. 61). Moreover, no language in the plea agreement even confers the trial court with discretion over the probationary terms.

[28] It is well established that where the terms of probation are not contemplated by the plea agreement, "[t]rial courts are free to impose administrative or ministerial conditions as terms of probation." *S.S. v. State*, 827 N.E.2d 1168, 1171 (Ind. Ct. App. 2005), *trans. denied*. Such conditions may include reporting to a probation department, supporting dependents, and maintaining employment. *Disney v. State*, 441 N.E.2d 489, 494 (Ind. Ct. App. 1982). In fact, an offender "should reasonably expect that the county's standard conditions [of probation] may apply." *Freije v. State*, 709 N.E.2d 323, 325 (Ind. 1999). However, the court is precluded from levying "'substantial obligations of a

punitive nature' if the plea agreement 'is silent to such punitive conditions.'" *Jackson*, 968 N.E.2d at 332 (quoting *Bennett*, 802 N.E.2d at 921). Home detention is undisputedly a condition that "materially add[s] to the punitive obligation." *Freije*, 709 N.E.2d at 325-26. Because the plea agreement did not specify that the trial court had the discretion to impose punitive conditions of probation, I would find that it lacked the authority to order Madden to be placed on home detention. *See Berry v. State*, 10 N.E.3d 1243, 1249 (Ind. 2014). Even Madden's verbal assent to the Terms of Probation is insufficient to permit the trial court to vary the terms of the plea agreement by adding a punitive obligation. *Jackson*, 968 N.E.2d at 332.

[29] Based on the foregoing, I would reverse and remand with instructions for the trial court to revise Madden's Terms of Probation.