

FILED
Nov 01 2017, 5:21 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Trevor L. Morgan, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | November 1, 2017 <br><br> Court of Appeals Case No. <br> 84A01-1703-CR-587 <br><br> Appeal from the Vigo County <br> Superior Court <br><br> The Honorable David R. Bolk, <br> Judge <br><br> Trial Court Cause No. <br> 84D03-0907-FA-2258 |

**May, Judge.**

[1]     Trevor L. Morgan appeals the revocation of his direct placement in community corrections.  He alleges Indiana Code section 35-38-2.6-5 is unconstitutional and he was denied due process.  We affirm and remand.

# Facts and Procedural History

[2] In 2010, Morgan pled guilty to Class A felony dealing in methamphetamine[1] and Class C felony neglect of a dependent.[2] He was sentenced to an aggregate term of twenty years, with ten years suspended to probation.

[3] In February 2013, Morgan requested and was granted placement in a community transition program. However, he violated the terms and was ordered to serve two years of the suspended portion of his sentence "on the Work Release Program under supervision of Vigo County Community Corrections." (App. Vol. 2 at 188.)

[4] On January 4, 2017, the State filed a petition to revoke Morgan's placement in the work release program. The State alleged he had committed nine violations of the program rules, including being in an unauthorized area, refusing an order, working outside an approved area, and escaping the facility. The trial court conducted a hearing on the allegations. At the hearing, Case Manager Bradley Burton testified regarding the violations Morgan allegedly committed. Morgan's attorney cross-examined Burton. Morgan testified and admitted some of the allegations and provided excuses for others. The trial court found Morgan committed the violations and revoked his placement in the program.

---

[1] Ind. Code § 35-48-4-1.1 (2006).

[2] Ind. Code § 35-46-1-4 (2007).

The trial court ordered Morgan to serve the remainder of his suspended sentence in the Department of Correction ("DOC").

# Discussion and Decision

Morgan asserts amended Indiana Code section 35-38-2.6-5 (2015), which controls the community corrections program, is unconstitutional because it impermissibly delegates judicial authority to a member of the executive branch, *i.e.* the community corrections director, and because it permits revocation of community corrections placements without an "evidentiary hearing before a neutral and detached magistrate." (Appellant's Br. at 8.) Although Morgan did not raise these concerns before the trial court, he asserts they amount to fundamental error as "a blatant violation of due process." (*Id*. at 9.) Morgan asserts the statute is facially unconstitutional or, at the very least, unconstitutional as applied to him because his hearing "fail[ed] to comport with due process." (*Id*.)

The State asserts Morgan has waived these challenges and, even if he had not, the statute is not unconstitutional. Failure to object at trial generally waives the issue for appeal, except in cases of fundamental error. *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014), *cert. denied*. "Fundamental error is an error that makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009), *reh'g denied*.

# Improper Delegation of Judicial Authority

[7] We review a constitutional challenge of a statute *de novo*. *Morgan v. State*, 22 N.E.3d 570, 573 (Ind. 2014). "A challenge to the validity of a statute must overcome a presumption that the statute is constitutional." *Brown v. State*, 868 N.E.2d 464, 467 (Ind. 2007). "The burden to rebut this presumption is upon the challenger, and all reasonable doubts must be resolved in favor of the statute's constitutionality." *State v. Lombardo*, 738 N.E.2d 653, 655 (Ind. 2000).

[8] Article 3, section 1 of the Indiana Constitution divides the powers of the government into three departments: "the Legislative, the Executive including the Administrative, and the Judicial." It further provides none of the branches "shall exercise any of the functions of another, except as in this Constitution expressly provided." *Id*.

[9] Indiana Code section 35-38-2.6-5 (2015) states:

> If a person who is placed under this chapter violates the terms of the placement, the community corrections director may do any of the following:
>
> > (1) Change the terms of the placement.
>
> > (2) Continue the placement.
>
> > (3) Reassign a person assigned to a specific community corrections program to a different community corrections program.

(4) Request that the court revoke the placement and commit the person to the county jail or department of correction for the remainder of the persons sentence.

The community corrections director shall notify the court if the director changes the terms of the placement, continues the placement, or reassigns the person to a different program.

[10] Morgan asserts that statute is facially unconstitutional as it "improperly delegates the judicial branch's duty to tailor appropriate sentences to the executive branch." (Appellant's Br. at 13) (formatting revised). He claims the amendment allows the community corrections director the sole ability to

engage in factfinding to determine whether a violation has occurred and, if so, whether the terms of the placement should be continued or changed, whether a defendant should be reassigned to a different and likely more restrictive community corrections program, or whether revocation should be recommended based on a finding of violation[.]

(*Id.*) He is not wrong, but none of those allowances infringe on the powers of the judiciary.

[11] To decide whether a governmental branch's powers have been delegated elsewhere, we first determine if the statute "has the effect of a coercive influence on the perceived usurped branch of government." *A.B. v. State*, 949 N.E.2d 1204, 1212 (Ind. 2011), *reh'g denied*. Such influence is prohibited by Article 3, section 1 of the Indiana Constitution, *id.*, which specifically prohibits one governmental branch from exercising the powers of the others. Ind. Const. Art.

3, sec. 1. "[T]he Judiciary possesses the authority to 'fix the penalty of and sentence a person convicted of an offense' [and i]t is well-settled under the doctrine of separation of powers that the Legislature cannot interfere with the discharge of judicial duties[.]" *Lemmon v. Harris*, 949 N.E.2d 803, 814 (Ind. 2011) (citing Ind. Code § 35-50-1-1 (2008)).

[12] The statute in question here does not act as a coercive influence on the judiciary's ability to discharge its duties. The trial court sentenced Morgan to twenty years with ten years suspended. The trial court allowed Morgan to be placed on probation in 2013 but he violated the rules of that program. After hearing evidence and finding Morgan committed those violations, the court ordered Morgan to serve two years of his suspended sentence "on the Work Release Program under supervision of Vigo County Community Corrections." (App. Vol. 2 at 188.)

[13] With the statute at issue, the community corrections director is given the ability to manage the community corrections program but not to revoke placement or resentence participants. Although the community corrections director can recommend revocation of placement, it remains the trial court's duty to determine whether revocation will be ordered. *See Madden v. State*, 25 N.E.3d 791, 795 (Ind. Ct. App. 2015) (trial courts set the terms of community corrections but the program has authority to supervise those terms), *trans. denied.* The community corrections director did not increase the trial court's overall sentence of twenty years, nor did the director alter the two years Morgan was sentenced to serve on work release. After finding nine violations

over four months, the community corrections director, via the deputy prosecutor, requested the trial court revoke Morgan's placement in the program. The trial court then held an evidentiary hearing. After hearing evidence, the trial court determined revocation was proper and ordered Morgan to serve the remaining portion of his suspended sentence in the DOC. Morgan has not demonstrated an improper delegation of the judiciary's duty to sentence convicted persons.[3]

[14] Administrative measures were taken to determine whether Morgan had violated the program's rules. Multiple administrative hearings were held to determine these violations. Morgan did not present objections to the outcome of those hearings to the trial court.[4] At the revocation hearing, Morgan admitted the violation regarding the day he did not report for work. (*See* Tr. at 18 ("I'll take credit for that" when asked about the day he "never reported to work").) Morgan's original sentence is still in place. The community corrections director did nothing to infringe on the judiciary's ability to craft an appropriate sentence. *See Madden*, 25 N.E.3d at 795 (it is not improper

---

[3] To the extent the community corrections director deprived Morgan of earned credit time, that is beyond his authority. *See Shepard v. State*, 84S01-1704-CR-190, slip op. at 5 (Ind. Oct. 20, 2017) ("only the D.O.C. is empowered to deprive an offender directly placed into a community corrections program of earned credit time"). It is unclear from the record whether the trial court found the community corrections director's deprivation of earned credit time was valid; however, as the community corrections director exceeded his authority, we remand for the trial court to reinstate any earned credit time the director of community corrections may have removed from Morgan.

[4] We find nothing in the record to indicate Morgan ever objected formally to the administrative measures.

delegation of sentencing power to allow "Community Corrections programs to supervise various aspects of probation").

# Due Process

[15] When reviewing a community corrections revocation, the standard of review is the same as the standard of review for a hearing on a probation revocation. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999), *reh'g denied.* A probation revocation proceeding is civil in nature and a probationer is not entitled to all of the rights afforded to a criminal defendant. *McCauley v. State,* 22 N.E.3d 743, 748 (Ind. Ct. App. 2014), *reh'g denied, trans. denied.* The due process requirements for probation revocation hearings are more flexible than in a criminal prosecution. *Reyes v. State,* 868 N.E.2d 438, 440 (Ind. 2007), *reh'g denied.* This flexibility allows courts to enforce lawful orders, address an offender's personal circumstances, and protect public safety. *Id.* Therefore, we review such revocation decisions under an abuse of discretion standard. *Prewitt v. State*, 878 N.E.2d at 184, 188 (Ind. 2007). A decision is an abuse of discretion when it "is clearly against the logic and effect of the facts and circumstances." *Id.*

## *Facial Unconstitutionality*

[16] Morgan asserts the 2015 amendment of Indiana Code section 35-38-2.6-5 removed the requirement for a hearing before a community corrections placement can be revoked, which violates the principles of due process and is facially unconstitutional. Prior to the amendment, the statute read:

> If a person who is placed under this chapter violates the terms of the placement, the court may, after a hearing, do any of the following:
>
> > (1) Change the terms of the placement.
> >
> > (2) Continue the placement.
> >
> > (3) Revoke the placement and commit the person to the department of correction for the remainder of the person's sentence.

Ind. Code § 35-38-2.6-5 (1991).

[17]    Now it reads:

> If a person who is placed under this chapter violates the terms of the placement, the community corrections director may do any of the following:
>
> > (1) Change the terms of the placement.
> >
> > (2) Continue the placement.
> >
> > (3) Reassign a person assigned to a specific community corrections program to a different community corrections program.
> >
> > (4) Request that the court revoke the placement and commit the person to the county jail or department of correction for the remainder of the persons sentence.

> The community corrections director shall notify the court if the director changes the terms of the placement, continues the placement, or reassigns the person to a different program.

Ind. Code § 35-38-2.6-5 (2015).

[18] To the extent Ind. Code section 35-38-2.6-5 was amended and the explicit requirement for a hearing was not included in the amended statute, the community corrections director is still required to request the court revoke the placement. As community corrections revocations are analogous to probation revocations, *see Cox*, 706 N.E.2d at 549, when a petition for revocation is filed, "the court shall conduct a hearing concerning the alleged violation." Ind. Code § 35-38-2-3(d) (2015). Such a hearing requires the evidence be presented in open court where the person in the program is "entitled to confrontation, cross-examination, and representation by counsel." Ind. Code § 35-38-2-3(f) (2015); *see also Isaac v. State*, 605 N.E.2d 144, 148 (Ind. 1992) (due process is satisfied if, during a revocation hearing, the defendant is given "written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine adverse witnesses, and a neutral and detached hearing body"), *cert. denied*. Thus, pursuant to other statutes and caselaw, a hearing is still required even though this particular statute does not contain that requirement.

### As-Applied Unconstitutionality

[19] In the alternative, Morgan asserts the statute is unconstitutional as-applied to him. He claims the hearing he was afforded did not comport to due process

requirements because "the court deferred to an administrative decision that had already been made by the community corrections program director." (Appellant's Br. at 20.) Morgan analogizes his hearing to that in *Million v. State*, 646 N.E.2d 998 (Ind. Ct. App. 1995), but that case is distinguishable.

[20] In *Million*, the trial court "determined that Million was entitled to a hearing under the statute but that an administrative hearing before community corrections program personnel would be sufficient, subject to judicial review." 646 N.E.2d at 1002. The trial court held a hearing but merely "accepted [the community corrections director's] recommendation that Million's placement in the community corrections program be revoked." *Id*. at 999. Throughout that hearing, the State and the trial judge "agreed[] that the purpose of the proceeding was for the court to determine whether an administrative hearing was properly conducted." *Id.* at 1003. Additionally, Million was notified only orally of his violations, rather than given written notice. *Id.* at 1003 n.2. We held the hearing in *Million* amounted to nothing more than judicial review of the administrative hearing and deprived Million of due process as "he did not receive a neutral hearing before the trial court." *Id*. at 1003.

[21] At Morgan's hearing, the trial court gave Morgan written notice of his violations, the State presented evidence against him, he cross-examined the State's witness, and he presented his own evidence before a neutral body. Neither the State nor the trial court advanced the idea the hearing was merely a judicial review of the administrative process. During his own testimony, Morgan admitted to one of the violations and acknowledged he had pled guilty

to others.  Morgan was not denied due process.  *See Isaac*, 605 N.E.2d at 148 (due process is satisfied if, during a revocation hearing, the defendant is given "written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine adverse witnesses, and a neutral and detached hearing body"), *cert. denied*; *see also Madden*, 25 N.E.3d at 797 (any argument regarding due process denial based on alleged lack of hearing is negated by the fact a hearing was in fact provided)*.*

# Conclusion

[22] Indiana Code section 35-38-2.6-5 does not impermissibly delegate judicial power to the executive branch.  To the extent that the amended code section does not explicitly require a hearing, one is nevertheless required by other statutes and caselaw.  Morgan was given a hearing which comported with the principles of due process.  Therefore, we affirm and remand for determination of any credit time due to Morgan.

[23] Affirmed and remanded.

Barnes, J., and Bradford, J., concur.