

FILED

Apr 18 2018, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher Sturgeon
Clark County Public Defender's Office
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Michael Flowers,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 18, 2018

Court of Appeals Case No.
10A01-1703-CR-586

Appeal from the Clark Circuit
Court

The Honorable Andrew Adams,
Judge

Trial Court Cause No.
10C01-1006-FB-108

**Brown, Judge.**

[1] Michael Flowers appeals the trial court's revocation of his placement in a community corrections program. Flowers raises one issue which we revise and restate as whether the doctrine of *res judicata* precludes the trial court's revocation of his placement. We reverse and remand.

## Facts and Procedural History

[2] On September 27, 2012, Flowers entered a plea agreement in which he agreed to plead guilty to aggravated battery as a class B felony and the State agreed to dismiss the remaining counts against him. The plea agreement provided that Flowers would be sentenced to sixteen years executed at the Department of Correction and that the State had no objection to Flowers serving the "last six (6) year term (three (3) years actual) in the Clark County Work Release Program."[1] Appellant's Appendix Volume II at 140. The court's sentencing order states that it accepted Flowers's plea and "sentences [him] to the Indiana Department of Correction for a sixteen (16) year-executed term of imprisonment." *Id.* at 156. The order also states: "The State has no objection to [Flowers] serving the last six (6) year term (three (3) years actual) in the Clark County Work Release Program if approved by the Court." *Id.*

---

[1] Both parties cite to a copy of the plea agreement found in the presentence investigation report. The table of contents in the Appellant's Appendix lists "Statement of Plea Agreement; September 27, 2012" as appearing on pages 114-121. Appellant's Appendix Volume I at 4. Unlike the plea agreement found in the presentence investigation report, the plea agreement beginning on page 114 includes the handwritten phrase "IF APPROVED BY THE COURT" following the statement: "The State has no objection to the Defendant serving the last six (6) year term (three (3) years actual) in the Clark County Work Release Program." Appellant's Appendix Volume II at 117.

[3] On December 7, 2016, the State filed a Petition to Revoke Placement in Community Corrections Work Release alleging that Flowers failed to follow the rules of the Clark County Community Corrections Program by: "[p]ositive drug screen for Methamphetamine on 11/22/2016. Mr. Flowers admitted to the use of Methamphetamine and signed an admission form stating that he used said substance on 12/7/2016"; having "multiple late returns to the work release facility ranging from 5 minutes to over an hour"; and being in arrears in program fees in the amount of $7,210.50. *Id.* at 161.

[4] On January 18, 2017, the court held a hearing on the petition to revoke placement. Flowers admitted to the violations. Valerie, Flowers's case manager, indicated she believed Flowers's behavior would prevent him from qualifying to re-enter community corrections. She testified that Flowers "could not comply with the terms and conditions of Work Release." Transcript Volume II at 18. The prosecutor recommended that Flowers serve the remainder of his sentence in the Department of Correction. Flowers's counsel recommended that the court modify the sentence and order Flowers to serve the balance of his sentence on home incarceration. The court found that Flowers violated the terms and conditions of work release, granted the change of placement, and stated that "the executed portion, balance of the executing portion of the sentence be served as a direct placement in the Clark County

Community Corrections and is given credit for forty-two (42) actual days good time credit."[2] *Id.* at 28.

[5] On January 24, 2017, Flowers's counsel filed a Notice of Withdrawal of Public Defender. On January 26, 2017, the court held a hearing[3] at which it stated, "I think that you entered, placed you back on the, to Community Corrections," and "[f]or some reason, Judge, I was out, Judge South has not been back to sign an order. I went ahead and signed it." *Id.* at 29. The court informed Flowers "this is a zero tolerance policy," and Flowers stated that he understood. *Id.* The court also told Flowers that it was sending him to the community corrections program.[4]

[6] In a letter dated January 31, 2017, Clark County Community Corrections Director Lindon Dodd wrote to the trial court informing it that the Clark County Community Corrections "feels that . . . Flowers no longer qualifies to be in this program" and that "[t]here are numerous violations and other actions that I feel justified denying him to return to Community Corrections."

---

[2] A chronological case summary ("CCS") entry dated January 18, 2017, states: "Court orders Defendant be placed in the Clark County Community Corrections Program for the remainder of executed sentence, with credit for 42 actual days. Senior Judge Nicholas South presiding." Appellant's Appendix Volume II at 10. The record does not contain a separate order dated January 18, 2017.

[3] The CCS states that Flowers was represented by counsel.

[4] A CCS entry states in part: "Defendant to be released to Community Corrections." Appellant's Appendix Volume II at 11. The record does not contain a copy of a separate order.

Appellant's Appendix Volume II at 226. Director Dodd requested that Flowers not be returned to the program.

[7] On February 2, 2017, Flowers filed a letter with the court which stated in part:

> On 1-30-17 I had Jerry from "Jerry's Place" to speak with [Director Dodd] of the Clark County [Community] Corrections and was told [Director Dodd] was going to go against the court order and not allow [me] to return or be placed in the Clark County [Community] Corrections on house arrest because he has personal reasons for Director [Dodd] not to let me out of jail.
>
> I Michael Flowers am asking the Clark County Circuit Court to be brought before this court again for a[] possible alternative placement of probation over that [Community] Corrections.
>
> An[d] to be brought before the Clark County Circuit Court an[d] be told why [Director Dodd] of the Clark County [Community] Corrections can refuse a court order that was signed on 1-26-17 because of personal reasons.
>
> And if I can be released until this matter is brought before your court I am being illegally detained in the Clark County Jail after my placement hearing.

*Id.* at 228-229.

[8] On February 15, 2017, the court held a revocation hearing. At the beginning of the hearing, Flowers's counsel objected to the proceedings and asked the court to execute the prior orders made by the court on January 18th. The court noted the objection, provided the background of the case, and noted that the court was informed on February 1, 2017, that Flowers "did not qualify or that they were not accepting Mr. Flowers back into the Community Corrections

Program." Transcript Volume I at 4. The court stated: "We will note your objection to the previously ordered – order of the Court by Senior Judge Nicholas South on January 18th, 2017 and we will note that any court order by a senior judge can be reviewed by the presiding judge, as well as modified or altered by the presiding judge." *Id.* The court also stated:

> The problem we have here is Community Corrections isn't willing to accept Mr. Flowers. I can't order them to accept him, it's their program. Similar to the Department of Corrections, I don't have the authority to tell the Department of Corrections what to do. If they're not willing to accept Mr. Flowers, then I don't have anything but to allow him to serve the remainder of his sentence.

*Id.* at 4-5.

[9] Flowers's counsel then moved to withdraw the admission that was made on January 18th, and the court granted the motion. Galadriel Ballard testified that Flowers violated the terms and conditions for not using any drugs or substances not prescribed by a doctor. He also testified that the late returns resulted in unaccounted time which was a violation of the work release process and that Flowers did not pay program fees in excess of $7,000. Ballard testified that he listed the dates for the late returns of about seventeen in total spanning a little over a year. He also testified that it was the position of the Clark County Community Corrections that it would not welcome Flowers back to community corrections. Director Dodd testified that he thought Flowers was a danger to the community and to himself.

[10] Flowers's counsel made an offer of proof stating that he thought the testimony would show that Flowers was a suspect or a person of interest in a murder investigation of two people that involved a cell phone that was allegedly identified to "this individual" and that Flowers would "deny any involvement in any of that sort of thing." *Id.* at 19. The court noted the offer of proof.

[11] The prosecutor requested the court to find that Flowers violated the terms of the work release program and that he serve the remainder of his sentence. Flowers's counsel asked the court to find that the punishment that had been imposed on Flowers to that point was adequate "for those violations, if accepted as true, and to direct the Community Corrections to accept him as Judge South had and to disregard, as the Court indicated, the underlying real reasons as to why we're here." *Id.* at 20.

[12] The court found that Flowers violated the terms of the community corrections program and granted the request of the community corrections program to revoke Flowers's placement in the program.

## *Discussion*

[13] The issue is whether the doctrine of *res judicata* precludes the trial court's revocation of Flowers's placement in the community corrections program. Flowers asserts that the February 15, 2017 hearing on the State's petition to revoke placement in community corrections was barred by *res judicata*. The State argues that the doctrine of *res judicata* did not bar the revocation of Flowers's placement in community corrections. It asserts that Flowers's status

or his placement with community corrections was heard over the course of three separate hearings and that evidence at the third hearing was not presented at the earlier two hearings. The State also asserts that the doctrine of *res judicata* does not apply to a proceeding like this one, which is not treated as an adversarial criminal proceeding.

[14] The Indiana Supreme Court has held that "[r]es judicata is a legal doctrine intended 'to prevent repetitious litigation of disputes that are essentially the same, by holding a prior final judgment binding against both the original parties and their privies.'" *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 993 (Ind. 2014) (quoting *Becker v. State*, 992 N.E.2d 697, 700 (Ind. 2013)). "It applies 'where there has been a final adjudication on the merits of the same issue between the same parties.'" *Id.* (quoting *Gayheart v. Newnam Foundry Co., Inc.*, 271 Ind. 422, 426, 393 N.E.2d 163, 167 (1979)).

[15] Generally, Ind. Code § 11-12-1-1 defines a community corrections program as:

> a community based program that provides preventive services, services to offenders, services to persons charged with a crime or an act of delinquency, services to persons diverted from the criminal or delinquency process, services to persons sentenced to imprisonment, or services to victims of crime or delinquency, and is operated under a community corrections plan of a county and funded at least in part by the state subsidy provided in IC 11-12-2.

Ind. Code § 35-38-2.6-2 defines a community corrections program as "a program consisting of residential and work release, electronic monitoring, day

treatment, or day reporting that is: (1) operated under a community corrections plan of a county and funded at least in part by the state subsidy provided under IC 11-12-2; or (2) operated by or under contract with a court or county." Ind. Code § 35-38-2.6-4.2(a) provides that "[a] community corrections program shall establish written criteria and procedures for determining if an offender or alleged offender is eligible for direct placement supervision under this chapter." Ind. Code § 35-38-2.6-4.2(b) provides that "[t]he criteria and procedures established under subsection (a) must establish a record keeping system that allows the department or community corrections program to quickly determine if an offender or alleged offender is in violation of the terms of a direct placement order issued under this chapter." We also observe that Ind. Code § 33-23-2-4 provides: "All courts retain power and control over their judgments for ninety (90) days after rendering the judgments in the same manner and under the same conditions as they retained power and control during the term of court in which the judgments were rendered."

[16] We have previously held:

> For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. The similarities between the two dictate this approach. Both probation and community corrections programs serve as alternatives to commitment to the [Department of Correction] and both are made at the sole discretion of the trial court. A defendant is not entitled to serve a sentence in either probation or a community corrections program. Rather, placement in either is

a matter of grace and a conditional liberty that is a favor, not a right.

*Withers v. State*, 15 N.E.3d 660, 663-664 (Ind. Ct. App. 2014) (quoting *Monroe v. State*, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009) (citations and quotation marks omitted)).

[17] To the extent Flowers asserts that there was nothing new at the February 15th hearing, we disagree. Following the trial court's order in January that Flowers be placed in the community corrections program, the director of the community corrections program informed the court that he felt justified denying Flowers's return to community corrections and requested that Flowers not be returned to the program. Further, Flowers sent a letter to the court essentially requesting a hearing. Under these circumstances and in light of Ind. Code § 33-23-2-4, we cannot say that the doctrine of *res judicata* warrants reversal.[5]

[18] Nonetheless, we believe the trial court's analysis was flawed in two respects warranting remand for reconsideration and entry of a new order. First, we note that the trial court stated at the February 15, 2017 hearing that "any court order by a senior judge can be reviewed by the presiding judge, as well as modified or

---

[5] To the extent Flowers cites *Shumate v. State*, 718 N.E.2d 1133 (Ind. Ct. App. 1999), we do not find that case instructive. In *Shumate*, we addressed whether a decision by this Court reversing the revocation of probation constituted a final judgment on the merits that precluded relitigation. 718 N.E.2d at 1135. We held that the reversal of the trial court's judgment revoking Shumate's probation was a judgment on the merits and satisfied the "judgment on the merits" element of res judicata. *Id.* at 1136. Here, we are not confronted with a prior appellate decision reversing a revocation of a placement in community corrections. Thus, we find *Shumate* distinguishable.

altered by the presiding judge." Transcript Volume I at 4. This statement equates the role and authority of a senior judge with that of a commissioner or a magistrate, which finds no support in the law. Ind. Code § 33-23-3-3 sets forth the powers and duties of senior judges and plainly states that a senior judge who is appointed to serve in a county may, with the consent of the circuit court judge (which, presumably, occurred in this case, as Judge South was permitted to preside over the first revocation hearing) "sit as the judge of the consenting judge's court in any matter as if the senior judge were the elected judge or appointed judge of the court." In other words, a court order entered by a senior judge must be treated precisely the same as any order entered by any presiding judge. The trial court was, in fact, entitled to revisit Judge South's order, but *not* because of his status as a senior judge. Instead, the trial court was permitted to do so by virtue of Ind. Code § 33-23-2-4, which, as previously noted, provides that all courts "retain power and control over their judgments for ninety (90) days after rendering the judgments in the same manner and under the same conditions as they retained power and control during the term of court in which the judgments were rendered."

[19] Second, the trial court believed that its proverbial hands were tied by the refusal of Community Corrections to accept Flowers as a client: "The problem we have here is Community Corrections isn't willing to accept Mr. Flowers. I can't order them to accept him, it's their program." Transcript Volume 1 at 4-5. This analysis is flawed. Ind. Code § 35-38-2.6-5 is the primary statutory source of authority given to Community Corrections programs. That statute authorizes

the Community Corrections Director to choose between the following courses

of action if a client violates the terms of the placement:

> (1) Change the terms of the placement.
>
> (2) Continue the placement.
>
> (3) Reassign a person assigned to a specific community corrections program to a different community corrections program.
>
> (4) *Request that the court revoke the placement* and commit the person to the county jail or department of correction for the remainder of the person's sentence.
>
> The community corrections director shall notify the court if the director changes the terms of the placement, continues the placement, or reassigns the person to a different program.

Ind. Code § 35-38-2.6-5 (emphasis added). The statute reveals that the

Community Corrections program is not authorized to make the decision to

revoke; instead, it must make that request of the court, which then has the

authority to grant or deny the request. The final sentence of the statute, which

omits a possibility of a Community Corrections program conducting a *sua*

*sponte* revocation, emphasizes the fact that the program has no right to do so.

[20]    The trial court was incorrect to believe that it was required to accept the

Community Corrections program's decision to revoke Flowers's placement.

Instead, the trial court should have treated that decision as a request for the

court to revoke Flowers's placement, which it would have been free to grant or

deny. *See Morgan v. State*, 87 N.E.3d 506, 510 (Ind. Ct. App. 2017) ("With the

statute at issue, the community corrections director is given the ability to manage the community corrections program but not to revoke placement or resentence participants. Although the community corrections director can recommend revocation of placement, it remains the trial court's duty to determine whether revocation will be ordered."), *trans. denied*. We also note that even if the trial court chose to grant the request that Flowers not be readmitted to Community Corrections, it was not bound to remand Flowers to the Department of Correction as the court could have considered other alternatives as well.

[21] It may very well be that the trial court will ultimately arrive at the same determination. Nevertheless, we remand so that the trial court can reconsider its decision by making a proper analysis and then enter a new order.

## *Conclusion*

[22] For the foregoing reasons, we reverse and remand.

[23] Reversed and remanded.

Baker, J., concurs.

Riley, J., dissents with separate opinion.

| | |
|---|---|
| Michael Flowers, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | Court of Appeals Case No. <br> 10A01-1703-CR-586 |

**Riley, Judge, dissenting.**

[24] I find the majority's analysis concerning the trial court's statements about the authority of both senior judges and Community Corrections is wholly irrelevant to the issue before this court on appeal. Therefore, I dissent. Simply, Indiana Code section 33-23-2-4 authorized the trial court to modify the January 18, 2017 order granting placement in Community Corrections within ninety days. During that timeframe, based upon the recommendation of Community Corrections that Michael Flowers was not qualified for the program, the trial

court properly ordered his revocation in accordance with Indiana Code section 35-38-2.6-5(4).  Accordingly, I would affirm the trial court.