## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 04 2018, 10:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Vincent L. Scott
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Nettleton,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 4, 2018

Court of Appeals Case No.
29A02-1710-CR-2308

Appeal from the Hamilton
Superior Court

The Honorable Steven R. Nation,
Judge

Trial Court Cause No.
29D01-1502-F4-1597

**Barnes, Judge.**

# Case Summary

Michael Nettleton appeals the trial court's sentencing decision following revocation of his placement in community corrections. We affirm.

# Issues

The State cross-appeals this court's granting of permission for Nettleton to pursue a belated appeal. Nettleton challenges the trial court's decision not to order his placement in the Department of Correction's Purposeful Incarceration program after revoking his placement in community corrections.

# Facts

On June 18, 2015, Nettleton pled guilty to one count of Level 5 felony stalking, in exchange for which the State dismissed a Level 4 felony stalking charge. On October 5, 2015, the trial court sentenced Nettleton to a term of three years, with two years on work release and one year on electronic home monitoring through Hamilton County Community Corrections ("HCCC"). The trial court also revoked Nettleton's probation for a prior Level 5 felony stalking conviction and ordered him to serve two years of a previously-suspended sentence; the HCCC placement was to be served consecutive to this two-year sentence. During the sentencing and probation revocation hearing, the trial court indicated that it was reluctant to accept Nettleton's guilty plea, stating:

> I was going to go ahead and deny the plea and have you be
> sentenced to more time in jail. You're 24 years old. You've had
> four felony convictions. Three of them have ended up in
> violations. And you tested positive for marijuana while you were

on probation. That's a horrible record. And if your counsel hadn't said that he really saw a change in your life, the only thing I could even see for you was Department of Corrections.

Tr. Vol. II pp. 24-25.

[4] Nettleton began serving his placement with HCCC on February 26, 2016. On July 19, 2016, Nettleton was arrested and charged with Level 5 dealing in cocaine; HCCC filed a notice of violation of community corrections on that same date. On July 21, 2016, HCCC filed a second notice of violation of community corrections, alleging that Nettleton had tested positive for cocaine on July 12, 2016, and that this was his second positive test.

[5] On August 3, 2017, Nettleton admitted to both community corrections violations. On that same date, he also pled guilty to Level 5 felony possession of cocaine with intent to deliver, which charge was the basis of the first community corrections violation. On September 7, 2017, the trial court held a sentencing hearing. With respect to the current case, the court revoked Nettleton's community corrections placement and ordered him to serve three years in the Department of Correction ("DOC"). On the new conviction, the court imposed an executed sentence of six years, to be served consecutive to the three-year sentence.

[6] At the conclusion of the sentencing hearing, defense counsel requested that the trial court order Nettleton's placement in the DOC's Purposeful Incarceration program. At first, the trial court indicated that it would designate Nettleton for such a placement because he appeared to be addicted to drugs. The State

objected to defense counsel's request. The trial court, defense counsel, and the prosecutor then discussed whether Nettleton would be entitled to a sentence modification if he successfully completed the Purposeful Incarceration program and whether an order directing Nettleton to participate in the program also would have to allow Nettleton to seek such a modification. Ultimately, the trial court ruled, "If it has to have the discretion of the Court to modify, then I'll vacate that part of the ruling. The sentence stands." *Id.* at 80.

On October 11, 2017, Nettleton's appellate counsel filed with this court a motion to file a belated notice of appeal. The motion stated that appellate counsel recently had been ill and had multiple obligations on his first day back in the office—October 10, 2017—which also was the last day to timely file a notice of appeal. On October 17, 2017, this court granted the motion to file a belated notice of appeal.

## Analysis

### I. Cross-Appeal

We first address the State's cross-appeal that we should dismiss Nettleton's appeal as untimely. This court already expressly granted Nettleton permission to belatedly appeal the trial court's ruling. We may reconsider an earlier order of this court while the case remains pending, although we are reluctant to do so unless a more complete record and briefing demonstrates that the previous order was contrary to clear authority. *See Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 245 (Ind. Ct. App. 2013), *trans. denied*.

[9] The State directs us to Post-Conviction Rule 2(1), which provides that "[a]n eligible defendant convicted after a trial or guilty plea may petition the trial court for permission to file a belated notice of appeal of the conviction or sentence" if certain conditions are met. The State contends that Nettleton was not an "eligible defendant" under this rule because it does not apply to probation or community corrections revocations, citing *Dawson v. State*, 943 N.E.2d 1281 (Ind. 2011). The State also notes that Nettleton's appellate counsel failed to explicitly advise this court that he was appealing from a community corrections revocation, not an original conviction or sentence.

[10] Be that as it may, this court did not base its earlier ruling upon Post-Conviction Rule 2, which in any event requires a defendant to seek permission to pursue a belated appeal from the trial court, not this court. Rather, we expressly based our ruling upon Appellate Rule 1 and our supreme court's decision in *In re Adoption of O.R.*, 16 N.E.3d 965 (Ind. 2014). Appellate Rule 1 states in part that we "may, upon the motion of a party or the Court's own motion, permit deviation from these Rules." In *O.R.*, the court made clear that this rule permits us to "resurrect" an untimely appeal if there are "extraordinarily compelling reasons" to do so. *O.R.*, 16 N.E.3d at 971-72. The failure to timely file a notice of appeal is not a "jurisdictional" defect. *Id.*

[11] Here, the request for permission to pursue a belated appeal was filed just one day after the thirty-day deadline to file a notice of appeal under Indiana Appellate Rule 9(a), after accounting for a weekend and a holiday. The cause of the minimal delay was counsel's recent illness. In reliance upon our earlier

ruling, a record has been prepared and briefs have been filed. We see no overwhelming reason why we should now avoid addressing the merits of this appeal and, thus, we reaffirm our previous decision to allow this appeal to proceed. *See Morales v. State*, 19 N.E.3d 292, 296 (Ind. Ct. App. 2014) (proceeding to consider merits of appeal from denial of post-conviction relief where notice of appeal was filed one day late), *trans. denied*.

## II. *"Purposeful Incarceration"*

[12] We now turn to the merits of Nettleton's claim that the trial court should have ordered his participation in the DOC's Purposeful Incarceration program; Nettleton makes no claim that his community corrections placement should not have been revoked or that an executed sentence of three years was excessive. We review a community corrections revocation using the same standard as for a probation revocation. *Morgan v. State*, 87 N.E.3d 506, 510 (Ind. Ct. App. 2017), *trans. denied*. Trial courts are allowed flexibility in enforcing lawful community corrections orders, addressing an offender's personal circumstances, and protecting public safety. *Id.* Thus, we review community corrections revocation decisions for an abuse of discretion. *Id.* at 511. An abuse of discretion occurs if a decision is clearly against the logic and effect of the circumstances before the court. *Id.*

[13]   The DOC website describes the Purposeful Incarceration program[1] as follows:

### What is Purposeful Incarceration or "PI"?

Purposeful Incarceration, or "PI," is a sentencing order that judges can use in situations where the judge is committed to modifying a sentence upon the offender's successful completion of an IDOC Addiction Recovery Treatment Program. The Department of Correction will provide a substance use disorder assessment to determine if clinical treatment is appropriate and then make every effort to accommodate quick placement into an appropriate level of addiction recovery program.

### What does a judge have to do to refer an offender for Purposeful Incarceration?

The court must indicate on the Abstract of Judgment or Sentencing Order that should the offender successfully complete the clinically indicated addiction recovery program, the court will consider modification of the offender's sentence. In addition, Purposeful Incarceration should be marked on the AOJ as required by the INCite program through JTAC[.]

A judge MUST INCLUDE the following language in the sentencing order or abstract of judgment in order for the offender to be identified as a Purposeful Incarceration candidate:

---

[1] It does not appear the Purposeful Incarceration program is directly governed by a statute or administrative rule.

> "Upon successful completion of the clinically appropriate substance abuse treatment program as determined by IDOC, the court will consider a modification to this sentence."

https://www.in.gov/idoc/files/PI%20FAQ%20Updated%2012.15.pdf (last visited April 18, 2018).

[14] The discussion at the time of Nettleton's revocation and sentencing focused on whether, if the trial court directed the DOC to consider him for the Purposeful Incarceration program, the court would be required to modify his sentence if he completed the program or if it would only have to consider modification. The DOC description of the program is not entirely clear, as it first says the program is intended for use where a court is "committed" to a sentence modification, but then subsequently says a court need only "consider" a sentence modification. In any event, it is apparent that a trial court's decision whether to recommend an offender's placement in the program is purely discretionary, as with other sentencing matters, and moreover that a prosecutor is free to object to an offender's request to be placed in the program.

[15] We see no abuse of discretion in the trial court's refusal to recommend Nettleton's placement in the Purposeful Incarceration program. Although the court may have believed Nettleton could benefit from substance abuse treatment while incarcerated, it also is clear that the court was not at all inclined to consider a later sentence modification for him or to permit a subsequent judge to consider one even if he successfully completed the program. At the time of Nettleton's guilty plea and original sentencing in October 2015, the

court already was concerned that his sentence was too lenient in light of his criminal history and previous failed attempts at probation. Nevertheless, the court was willing to give Nettleton the benefit of the doubt, which he violated shortly after beginning his time with HCCC. Also, Nettleton admitted during the revocation hearing that he had completed the requirements for the "PI" program during one of his previous stints in the DOC, although he was not officially in the program. Tr. Vol. II p. 67. Clearly, his participation in that program had not prevented his reoffending and resuming use of illegal drugs. Because the trial court was not willing to consider modifying Nettleton's sentence if he completed the Purposeful Incarceration program—and it had good reason not to do so—it did not abuse its discretion in refusing to recommend his participation in the program.

## Conclusion

[16] We decline to dismiss Nettleton's appeal. However, the trial court did not abuse its discretion in refusing to recommend Nettleton's placement in the DOC's Purposeful Incarceration program after revoking his community corrections placement. We affirm.

[17] Affirmed.

Vaidik, C.J., and Pyle, J., concur.