## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 29 2020, 11:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General

Samuel J. Sendrow
Certified Legal Intern

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Emmanuel Lee Haymon, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 29, 2020 <br><br> Court of Appeals Case No. 20A-CR-170 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Samuel L. Cappas, Judge <br><br> Trial Court Cause No. 45G04-1605-F4-15 |

**Pyle, Judge.**

# Statement of the Case

[1] Emmanuel Haymon ("Haymon") appeals the revocation of his placement in a community corrections program. Haymon, who admitted that he had violated rules of the community corrections program, argues that the trial court abused its discretion by ordering him to serve the remainder of his sentence at the Indiana Department of Correction ("DOC"). Concluding that there was no abuse of discretion, we affirm the trial court's judgment.

[2] Affirmed.

# Issue

Whether the trial court abused its discretion by ordering Haymon to serve the remainder of his sentence in the Indiana Department of Correction.

# Facts

[3] In May 2016, the State charged Haymon with: Count 1, Level 4 felony dealing in a narcotic drug; Count 2, Level 4 felony dealing in a narcotic drug; and Count 3, Level 6 felony dealing in a substance represented to be a controlled substance. In May 2017, Haymon entered a plea agreement and pled guilty to an amended charge of Level 5 felony dealing in a narcotic drug in exchange for the State's dismissal of the remaining charges. The parties agreed that Haymon would be sentenced to five (5) years, with two (2) years executed in the DOC and three (3) years to be served in the Lake County Community Corrections

Program ("community corrections"). The trial court accepted Haymon's plea and sentenced him in accordance with the plea agreement.[1]

[4] Haymon completed the DOC portion of his sentence, and then, in September 2018, began serving the remaining portion of his sentence in the community corrections program, which included a work release program. In September 2019, community corrections filed a "Petition to Expel" Haymon from the program, alleging that Haymon had violated the conditions of his placement by: (1) returning to the facility late on three different occasions; (2) possessing contraband, i.e., rolling papers, on July 24, 2019; (3) testing positive for alcohol on July 13 and September 11, 2019; (4) failing to call the mandatory drug screen line from June 27 to July 1, 2019; and (5) failing to pay fees. (App. Vol. 2 at 104). The petition also noted that Haymon had "demonstrated a total disregard" for the rules of the program and that "his actions indicate[d] that he [wa]s beyond the effective control of this form of supervision." (App. Vol. 2 at 104).

[5] The trial court held multiple hearings in relation to the petition to expel. At the September 26, 2019 hearing, Haymon's counsel informed the trial court that counsel had sent an evaluation notice to community corrections to see if it

---

[1] The presentence investigation report ("PSI") compiled at the time of sentencing reveals that then thirty-two-year-old Haymon had five misdemeanor convictions, one felony conviction entered as a misdemeanor, and one felony conviction. He also had previous unsuccessful attempts at probation. The PSI also revealed that Haymon admitted that he had used various drugs—including alcohol, marijuana, heroin, cocaine, PCP, Xanax, and ecstasy—and that he had an addiction to marijuana and heroin. The PSI also showed that he had undergone alcohol and drug treatment in the past.

would take Haymon back into the program and that community corrections had declined his request. Haymon's counsel requested the trial court to reset the hearing so that counsel could further consult with Haymon. The trial court agreed and reset the revocation hearing.

[6] At the October 31, 2019 hearing, Haymon's counsel told the trial court that Haymon was "not opposing the substance of the petition to expel" but that he wanted to "explor[e] an alternative on the sentencing[,]" such as placement in the Community Transition Court ("CTC"). (Tr. Vol. 2 at 12). The trial court commented that "when someone is expelled from Lake County Community Corrections, it generally prohibits [his] participation in CTC, because one starts in CTC in [community corrections]." (Tr. Vol. 2 at 13). Nevertheless, upon Haymon's counsel's request, the magistrate judge granted Haymon's request to be evaluated for CTC and stated that she would consult with her presiding judge on the issue. Shortly thereafter, community corrections assessed Haymon for admission into CTC and then notified the trial court that it had determined that Haymon was "NOT APPROPRIATE" for CTC. (App. Vol. 2 at 71).

[7] During the November 21, 2019 hearing, Haymon admitted that he had violated some of the terms of his community corrections placement as alleged. Specifically, he admitted that he had tested positive for alcohol in June and September, had failed to call the mandatory drug screen line, and had possessed rolling papers. The trial court then granted the petition to expel Haymon from community corrections. When the trial court moved to a consideration of sentencing, Haymon's counsel stated that "despite the petition [to expel] being

granted," Haymon was requesting the trial court to return him to community corrections. (Tr. Vol. 2 at 21). Haymon acknowledged that he had "a substance abuse problem" when he was arrested in this case. (Tr. Vol. 2 at 22). Haymon told the trial court that he felt that community corrections was "trying to send [him] back to prison for basically blowing hot off alcohol[,]" and he suggested that community corrections should have placed him in an Alcoholics Anonymous class or redone his case plan. (Tr. Vol. 2 at 21). The trial court pointed out to Haymon that his violations were "not just an issue of the alcohol" but also included other violations such as his failure to call the mandatory drug screen line. (Tr. Vol. 2 at 23). Upon the trial court's inquiry into Haymon's case plan, community corrections informed the trial court that Haymon had completed an Awakenings program that dealt with alcohol issues. The trial court then rescheduled the hearing so that it could further consider the sentencing issue and obtain "some information concerning his case plan" and "what was offered to him in terms of those treatment options." (Tr. Vol. 2 at 24).[2]

[8] At the December 9, 2019 hearing, Haymon's counsel told the trial court that Haymon wished to return to community corrections but understood "that that's not likely." (Tr. Vol. 2 at 29). Ultimately, the trial court rescheduled the hearing due to a docketing issue.

---

[2] The trial court also wanted to further consider a credit time argument that is not at issue in this appeal.

[9]     During the December 19, 2019 hearing, Haymon's counsel asked the trial court whether it was going to return Haymon to community corrections, and the trial court responded, "Well no.  I mean that's -- no, absolutely not.  He already made admissions and we already granted the petition so that he would not be returning . . . .  Under what circumstances would we -- why would we be doing that . . . ?  I guess I'm confused." (Tr. Vol. 2 at 40).  Haymon's counsel stated that Haymon had "no problem" with "being found in violation" of community corrections, but he wanted the trial court to "order him to remain on community corrections."  (Tr. Vol. 2 at 40).  The trial court responded that "when someone has violated the [community corrections] rules and a petition to expel has been granted, by definition, it's an expulsion from the program.  We've granted the expulsion.  So having granted that, we would not be putting him back there."  (Tr. Vol. 2 at 40-41).  When Haymon's counsel stated that Haymon had asked community corrections if it would consider taking him back, a community corrections representative confirmed that it had filed the petition to expel Haymon from community corrections because it wanted him removed from the placement.

[10]    The trial court revoked Haymon's community corrections placement and ordered him to serve the remaining three (3) years of his sentence in the DOC. The trial court recommended that Haymon be placed in the "Purposeful Incarceration Therapeutic Community Program" and informed Haymon that, upon his successful completion of the program, the court would consider a sentence modification.  (App. Vol. 2 at 111).  Haymon now appeals.

# Decision

[11] Haymon argues that the trial court abused its discretion by ordering him to serve his remaining three-year sentence at DOC instead of returning him to the community corrections placement. He contends that the trial court "misunderstood" its authority under INDIANA CODE § 35-38-2.6-5, believing that its "only option" was to revoke his community corrections placement and to order him to serve his remaining sentence at DOC. (Haymon's Br. 6, 9).

[12] We review a trial court's ruling on a petition to revoke a defendant's placement in a community corrections program the same as we do for a ruling on petition to revoke probation. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999), *reh'g denied*. "A defendant is not entitled to serve a sentence in either probation or a community corrections program." *Id.* "Rather, placement in either is a matter of grace and a conditional liberty that is a favor, not a right." *Id.* (citations and internal quotation marks omitted). We review a trial court's decision in a community corrections proceeding for an abuse of discretion. *McQueen v. State*, 862 N.E.2d 1237, 1242 (Ind. Ct. App. 2007). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007).

[13] When a defendant placed in a community corrections program violates the terms of the placement, INDIANA CODE § 35-38-2.6-5 authorizes a community corrections director to choose among the following courses of action:

> (1) Change the terms of the placement.

(2) Continue the placement.

(3) Reassign a person assigned to a specific community corrections program to a different community corrections program.

(4) *Request that the court revoke the placement and commit the person to the county jail or department of correction for the remainder of the person's sentence.*

I.C. § 35-38-2.6-5 (emphasis added).[3]  If the community corrections director exercises its authority to take any of the actions listed under subsections (1)-(3), the director is required to notify the trial court of such changes to a defendant's community corrections placement.  *Id.* (specifying that a community corrections director "shall" notify the court).  Thus, under this statute, "the community corrections director is given the ability to manage the community corrections program but not to revoke placement or resentence participants." *Morgan v. State*, 87 N.E.3d 506, 510 (Ind. Ct. App. 2017), *trans. denied*.  When subsection (4) is at issue, as it is here, "only the trial court may, at the request of

---

[3] Prior to a 2015 amendment to INDIANA CODE § 35-38-2.6-5, the statute provided:

> If a person who is placed under this chapter violates the terms of the placement, the court may, after a hearing, do any of the following:
>
> (1) Change the terms of the placement.
>
> (2) Continue the placement.
>
> (3) Revoke the placement and commit the person to the department of correction for the remainder of the person's sentence.

After 2015, this statute was again amended.  Most recently, during the 2020 legislative session, our general assembly amended INDIANA CODE § 35-38-2.6-5, effective July 1, 2020, to specify that a "prosecuting attorney" also has the authority to "request that the court revoke the placement and commit the person to the county jail or department of correction for the remainder of the person's sentence."  I.C. § 35-38-2.6-5(b). Here, the petition to revoke Haymon's community corrections placement was filed prior to this amendment, and this recent amendment is not at issue in this case.

the director, revoke a defendant's placement and order the defendant to execute the remaining portion of the defendant's sentence." *Breda v. State*, 142 N.E.3d 482, 487 (Ind. Ct. App. 2020), *reh'g denied*. *See also Flowers v. State*, 101 N.E.3d 242, 248 (Ind. Ct. App. 2018) (explaining that a trial court has the authority to grant or deny a community corrections director's request to revoke a defendant's placement); *Morgan*, 87 N.E.3d at 510 ("Although the community corrections director can recommend revocation of placement, it remains the trial court's duty to determine whether revocation will be ordered.").

[14] Haymon does not dispute that he violated the terms of his community corrections placement. Indeed, he admitted to violating various terms of his community corrections placement by testing positive for alcohol in June and September, failing to call the mandatory drug screen line, and possessing rolling papers. Haymon suggests that his admissions to violating the terms of community corrections "did not mean he had to be expelled from community corrections" and that the "trial court abused its discretion by failing to realize that the best rehabilitative option was to return Haymon to community corrections with additional substance abuse treatment." (Haymon's Br. 9).

[15] Here, after community corrections filed the petition to expel Haymon from the community corrections placement, the trial court held more than one hearing to determine whether to grant or deny community corrections' petition. At an initial hearing, after Haymon's counsel indicated that community corrections had declined Haymon's request to take him back into the program, the trial court allowed Haymon additional time to determine how he wanted to proceed.

At the October hearing, Haymon's counsel told the trial court that Haymon was not opposing the substance of the petition to expel but that he wanted to "explor[e] an alternative on the sentencing[,]" such as placement in CTC. (Tr. Vol. 2 at 12). The trial court granted Haymon's request to further investigate the option and to be evaluated for admission into CTC. This action indicates that the trial court was open to considering other options aside from ordering Haymon to serve his remaining sentence at DOC. Ultimately, however, Haymon was deemed not appropriate for admission to CTC.

[16] Thereafter, in the November hearing, Haymon admitted to violating the terms of his community corrections placement by testing positive for alcohol in June and September, failing to call the mandatory drug screen line, and possessing rolling papers. The trial court then granted the petition to expel Haymon from community corrections. When the trial court moved to a consideration of sentencing, Haymon's counsel stated that "despite the petition [to expel] being granted," Haymon was requesting the trial court to return him to community corrections. (Tr. Vol. 2 at 21). After the trial court discussed Haymon's community corrections case plan with Haymon and a community corrections representative, the trial court then rescheduled the hearing so that it could further consider the sentencing issue and obtain "some information concerning his case plan" and "what was offered to him in terms of those treatment options." (Tr. Vol. 2 at 24). This action also indicates that the trial court did not automatically determine that its only option was to order Haymon to serve his remaining sentence at DOC.

[17]     Ultimately, at the December 19, 2019 hearing, the trial court revoked Haymon's community corrections placement and ordered him to serve the remaining three (3) years of his sentence in the DOC. Additionally, the trial court incorporated a rehabilitative option. Recognizing Haymon's substance abuse issues, the trial court recommended that Haymon be placed in the purposeful incarceration program while at the DOC, and it informed Haymon that, upon his successful completion of the program, the court would consider a sentence modification. Because the record reflects that the trial court ordered Haymon to serve all three years in the DOC, not because of a misunderstanding of its options but rather because of the facts in this case, we affirm the trial court's judgment.

[18]     Affirmed.

Kirsch, J., and Tavitas, J., concur.