## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 09 2020, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christa K. Kumming
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Lee Rich,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 9, 2020

Court of Appeals Case No.
20A-CR-1421

Appeal from the Vigo Superior
Court

The Honorable John T. Roach,
Judge

Trial Court Cause No.
84D01-1808-F4-2925

**Bailey, Judge.**

# Case Summary

[1] Michael Lee Rich ("Rich") was serving a sentence through community corrections when the State filed a petition alleging that Rich violated the terms of his placement. After Rich admitted to violating several terms, the trial court revoked his placement and ordered Rich to serve the balance of his sentence in the Indiana Department of Correction (the "DOC"). Rich now appeals, arguing that the trial court abused its discretion in revoking his placement.

[2] We affirm.

# Facts and Procedural History

[3] Rich received a five-year sentence for Burglary.[1] The court ordered him to serve the time in community corrections and authorized placement on work release.

[4] In October 2019, Rich was placed on work release. In February 2020, the State filed a petition alleging that Rich violated the terms of work release by (1) possessing cigarettes in November 2019; (2) failing to report his location for more than four hours in December 2019; (3) being in an unauthorized area on more than one occasion; (4) testing positive for THC on January 2, 2020; (5) testing positive for amphetamines, methamphetamines, and THC on January

---

[1] At a combined sentencing hearing, Rich received a separate five-year sentence in a different cause that was imposed consecutively to the instant sentence. At times, the record refers to an aggregate sentence of ten years. Because the appealed order ultimately affected only the instant sentence, we focus on that sentence.

10, 2020; (6) possessing a lighter in February 2020; (7) possessing a "green leafy synthetic lookalike substance" in February 2020; (8) failing to pay fees; and (9) absconding from work release on February 21, 2020. Appellant's App. Vol. 2 at 153. The State asked the trial court to revoke Rich's placement and order Rich to serve the balance of his sentence in the Vigo County Jail or the DOC.

[5] At a July 2020 hearing, Rich denied that he absconded from placement but otherwise admitted to the allegations. The court found that Rich violated the rules and inquired about evidence "as to disposition." Tr. Vol. 2 at 11. The parties then presented evidence and argument. Among the evidence was testimony that Rich absconded on February 21, 2020, the day the State filed the petition. The State argued that the evidence "show[s] that [Rich] is clearly a poor candidate for any type of [c]ommunity [c]orrections in the future." *Id.* at 19. The court ultimately decided to revoke Rich's placement, ordering Rich to serve the balance of his sentence in the DOC. The court recommended that Rich be placed in the Purposeful Incarceration program and noted that it would consider a sentence modification upon successful completion of the program.

[6] Rich now appeals.

# Discussion and Decision

[7] "Both probation and community corrections programs serve as alternatives to commitment to the [DOC] and both are made at the sole discretion of the trial court." *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999). Because of similarities

between community corrections and probation, the "standard of review for revocation of a community corrections placement is the same standard as for a probation revocation." *Bennett v. State*, 119 N.E.3d 1057, 1058 (Ind. 2019). That is, we review for an abuse of discretion, which occurs "when the decision is clearly against the logic and effect of the facts and circumstances." *Id.*

[8] The trial court has broad discretion to revoke an alternative placement. *See Cox*, 706 N.E.2d at 549-50. Indeed, as the Indiana Supreme Court has observed, "judges must have the ability to move with alacrity to protect public safety when adjudicated offenders violate the conditions of their sentences. Put differently, obstacles to revoking an alternative sentence may diminish the likelihood of community corrections placements being made in the first place." *Id.* at 550. Furthermore, a defendant "is not entitled to serve a sentence in either probation or a community corrections program. Rather, placement in either is a 'matter of grace' and a 'conditional liberty that is a favor, not a right.'" *Id.* at 549 (quoting *Million v. State*, 646 N.E.2d 998, 1002 (Ind. Ct. App. 1995)). Ultimately, once a trial court has "exercised its grace" and ordered an alternative placement, the trial court "should have considerable leeway in deciding how to proceed." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007).

[9] Pursuant to Indiana Code Section 35-38-2.6-5(b), if a person on community corrections "violates the terms of the placement, the [State] may request that the court revoke the placement and commit the person to the county jail or [the DOC] for the remainder of the person's sentence." It is implicit, then, that the

court has inherent authority to grant the State's request.[2] *See Cox*, 706 N.E.2d at 550 (noting that flexibility in revocation procedures is "necessary to permit the court to exercise its inherent power to enforce obedience to its lawful orders"); *Flowers v. State*, 101 N.E.3d 242, 249 (Ind. Ct. App. 2018) (noting that a court may grant a request to revoke the placement and "consider[] other alternatives as well"). Generally, revocation is a two-step process whereby the court must first identify a violation of the terms, then it must "determine if the violation warrants revocation[.]" *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008).

[10] Rich does not dispute that he violated the terms of work release. Rather, he challenges the decision to revoke his placement for violating those terms.[3] In challenging his placement in the DOC, Rich argues that he struggled with substance abuse and was undergoing stress. He notes that his younger brother had been diagnosed with cancer and that Rich was soon to be the father of twins—stressors that led to a "backslide with sobriety." Br. of Appellant at 10.

---

[2] The statute pertaining to revoking **probation** enumerates actions a court may take upon the State's request. *See* Ind. Code § 35-38-2-3(h) (stating that, upon finding that a person violated a condition of probation, the court may continue the person on probation, extend the probationary period, or order execution of all or part of a suspended sentence). However, the statute pertaining to revoking placement in community corrections does not contain similar language regarding the court's authority. *Compare id. with* I.C. § 35-38-2.6-5; *see Breda v. State*, 142 N.E.3d 482, 486 (Ind. Ct. App. 2020) (discussing the effect of a 2015 amendment).

[3] Among Rich's contentions is that, before revoking his placement for a failure to pay fees, the court should have inquired into the reason for the failure to pay. Because Rich admitted to violating other terms, we need not address this issue and will instead base our analysis on other admitted violations. *See Jaynes v. State*, 437 N.E.2d 137, 140 n.3 (Ind. Ct. App. 1982) (regarding certain grounds for revocation as mere surplusage).

[11] Rich also points out that he did not admit to the allegation of absconding.[4] He argues that "some of the rule violations were minimal" and "were dealt with adequately by the work release facility already." *Id.* at 8. Rich asserts that, "for each rule violation, [he] received a sanction from the work release center, whether it be a verbal warning, increased restrictions on his freedom, or taking of his credit time of up to 14 days per violation." *Id.* at 11.

[12] Notably, even a single violation supports revoking the placement. *See* I.C. § 35-38-2.6-5; *cf. Heaton v. State*, 984 N.E.2d 614, 618 (Ind. 2013) ("[P]robation may be revoked on evidence of violation of a single condition."); *Cox*, 706 N.E.2d at 550 (noting that "judges must have the ability to move with alacrity . . . when adjudicated offenders violate the conditions of their sentences"). Although there is evidence that Rich was undergoing stress, he was nevertheless bound by the terms of work release. Shortly after being granted this conditional liberty, Rich repeatedly violated the terms. Indeed, Rich failed to report his location for several hours. He entered unauthorized areas on more than one occasion. He also tested positive for amphetamines, methamphetamines, and THC. Although Rich characterizes some violations as minimal, he displayed a pattern of violating the terms. Moreover, Rich continued to violate the terms even after the work release center imposed less-severe consequences. In light of Rich's

---

[4] Rich asserts that it is unclear whether the trial court found a violation for absconding, so it would be improper to base the revocation on absconding. The testimony about absconding was presented after the court found a violation and had turned to evidence "as to disposition." Tr. Vol. 2 at 11. We note that revocation procedures "are to be flexible." *Cox*, 706 N.E.2d at 550. In any case, we need not address this issue and will instead base our opinion only on the admitted violations. *See Jaynes*, 437 N.E.2d at 140 n.3.

ongoing disobedience, we cannot say that the trial court abused its discretion by revoking the placement and ordering Rich to serve his sentence in the DOC.

[13]    Affirmed.


Robb, J., and Tavitas, J., concur.